**Betty GARRETT, Plaintiff,**

v.

**MOBIL OIL CORPORATION, Defendant.**

**Civ. A. No. 20202–3.**

United States District Court, W. D. Missouri, W. D.

June 2, 1975.

William H. Pickett, Kansas City, Mo., for plaintiff.

Harry P. Thomson Jr., and Fred J. Wilkins, of Shughart, Thomson & Kilroy, Kansas City, Mo., for defendant.

## FINDINGS OF FACT,[1] CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR DEFENDANT ON BOTH COUNTS

WILLIAM H. BECKER, Chief Judge.

This is an action for injunctive relief and damages by a former employee of the defendant. In each of two separate counts, plaintiff, a Negro female, seeks to recover damages, including loss of wages and other benefits, and injunctive relief, as a result of the alleged intentional and wrongful termination of her employment with the defendant. Plaintiff contends in each count that her employment with the defendant was terminated because of her race, and also in retaliation to her complaints to the defendant about defendant's alleged discriminatory treatment of other employees of defendant of the same race as the plaintiff. In Count I of the complaint, relief is sought under the provisions of Section 706 of the Civil Rights Act of 1964, Section 2000e–5(e), Title 42, United States Code. In Count II, relief is sought under Section 1981, Title 42, United States Code. In each count jurisdiction is asserted under Section 1343, Title 28, United States Code. In addition, jurisdiction of Count II is asserted under Section 1331, Title 28, United States Code.

The claim for relief in Count II under Section 1981 was based on the allegations that ". . . the defendant intentionally deprived the plaintiff of the right and privilege to contract for employment without being fettered in this contracting and exercise of her constitutional right to contract by the race to which plaintiff belonged. Defendant intentionally discriminated against plaintiff by reason of her race and terminated plaintiff because plaintiff was a member of the negro race."

Jurisdiction exists under Section 2000e–5(e), Title 42, United States Code, in respect to Count I, and under Section 1343, Title 28, United States Code, in respect to Count II.

There were no allegations nor any request that this action be determined to be a class action. Furthermore, no class action determination was made on the initiative of this Court.

After the joinder of issues and the completion of pretrial proceedings, a plenary evidentiary trial without a jury was accorded the parties. At the close of the plaintiff's evidence, counsel for defendant filed defendant's "Motion of Defendant for Judgment at the Close of Plaintiff's Evidence." At the close of all of the evidence, counsel for defendant filed a "Motion of Defendant for Judgment at the Close of All Evidence." Both motions were denied. Because the material factual issues have been determined against the plaintiff, it will be unnecessary to evaluate the legal theory asserted by the plaintiff in Count II.

Prior to trial, both parties filed herein their extensive proposed findings of

---

1. A draft of the proposed findings of fact was delivered earlier to counsel with an invitation to point out any errors or deficiencies therein. Plaintiff filed a response to this invitation on May 2, 1975, in the form of a "Report." That report has been carefully considered in preparing this smooth draft of the findings of fact, conclusions of law and final judgment.

fact and conclusions of law. Subsequent to the trial, counsel for plaintiff filed "Supplementary Suggested Conclusions of Law." Thereafter, counsel for defendant filed his response to plaintiff's supplemental proposed conclusions of law.

Based on a careful review of the contentions of the parties and the evidence presented, the following factual and legal determinations have been made.

### Findings of Fact

Plaintiff Betty Garrett, a Negro female, sought and secured employment with the defendant on August 18, 1969. Prior thereto, plaintiff had been employed as an assembly line worker with the Western Electric Company. Plaintiff was employed by the defendant for duties in the defendant's Credit Card Center at Kansas City, Missouri. This Center, at the time of plaintiff's employment there, performed the functions of billing and collection for all Mobil Oil credit card accounts in 41 states. At the time of her employment, plaintiff was given an employee handbook which set forth the appropriate administrative procedures for lodging employee grievances and complaints.

Plaintiff was initially employed as a balance clerk "B" (salary group 4) at $345.00 per month on the evening shift. Thereafter on or about October 20, 1969, she was transferred to the day shift in the incoming mail section as an Office Services Clerk, but without a reduction in salary.

Plaintiff's first "Employee Appraisal and Development" report was dated February 13, 1970, and was prepared by plaintiff's Supervisor in the Income Mail Section, Jerry Eklund. That report concluded that plaintiff "fully meets job requirements" only in the category of adaptability; "fully meets job requirements (minus)" on quality of work; "barely meets job requirements (plus)" on attitude; "barely meets job requirements" on quality of work; and "barely meets job requirements" on stability. According to the initial appraisal, the plaintiff's strongest single qualification was potential or inherent ability to perform assigned tasks. The factor determined to need improvement the most was overall consistency in production, attitude and work habits. The initial appraisal was orally discussed with the plaintiff.

On March 11, 1970, plaintiff inquired of Mr. Eklund when her next review would be made, who would make such a review, and why she had not been given duties other than "traying" of mail (verifying the correctness and legibility of incoming charge tickets). The "other duties" apparently sought by plaintiff included xeroxing and microfilming. Mr. Eklund advised her that her duties would remain the same until the deficiencies in her appraisal report were remedied. He further advised her that her attitude and her willingness to comply with defendant's rules needed improvement. At the time of the March 11, 1970, meeting with Mr. Eklund, plaintiff expressed her personal doubt concerning the accuracy of her work records. A memorandum by Mr. Eklund with respect to the March 11, 1970, conference was placed in plaintiff's personnel file.

Thereafter, on March 18, 1970, plaintiff discussed her February appraisal with Beverly Lake, plaintiff's new Supervisor and successor to Mr. Eklund. Plaintiff advised her new Supervisor that she considered the appraisal to be unfair. A memorandum in plaintiff's personnel file concerning this discussion stated that plaintiff's work product had been better since her February appraisal, but that there were irregularities in her work record which represented carelessness. The memorandum further noted that such irregularities should be eliminated in the next thirty days in order to change plaintiff's performance rating.

On March 18, 1970, after the discussion with Mrs. Lake, plaintiff left her work station during working hours on

two separate occasions and unilaterally attempted, without permission or knowledge of her Supervisor and without appointment, to meet with Mr. Fish, the Center Manager of Operations. Plaintiff was advised that Mr. Fish was in a meeting and was directed to contact her Supervisor. After her unsuccessful attempt to meet with Mr. Fish and after being advised to return to work, plaintiff again left her work station during working hours, and went directly to the office of Mr. Ittel, Employee Relations Manager. Mr. Ittel's secretary advised plaintiff to return to her work station. Plaintiff responded by stating in words to the following effect: "I am not moving my ass out of this office until I see Mr. Ittel." Plaintiff never received any implied or direct permission from her Supervisor, Mrs. Lake, to leave her work station on this second occasion.

On this second occasion, plaintiff's Supervisor, Mrs. Lake, who was in conference with Mr. Ittel, requested that the plaintiff return to her work station. Plaintiff complied with Mrs. Lake's request and a brief conference between the two occurred. Mrs. Lake thereafter advised plaintiff that the proper procedure to present a complaint was to always discuss the matter with the Supervisor initially and, if not satisfied, to request the Supervisor to schedule an appointment with the next higher level of management. This oral explanation was authoritative and clear, clarifying the meaning of the printed handbook on procedures, which plaintiff had been given earlier. Plaintiff stated that she had not previously been aware of this procedure; that she felt she was being watched too closely; that she was fed up with the way the mail room was operated; and that she felt her Supervisors were concentrating on her and treating her like a child. Mrs. Lake explained to plaintiff the necessity of supervision. In addition, Mrs. Lake asked for plaintiff's suggestions on what she thought should be changed. Plaintiff presented no suggestions.

At the trial, plaintiff testified she believed earlier on March 18, 1970, that she had a right to go directly to higher authority and to leave her work station at any time without permission by her Supervisor. Under the circumstances, this was not a reasonable belief, even if it were held by plaintiff. This contention of rights by the plaintiff is unreasonable and is precluded by the overwhelming evidence of procedures in effect which were communicated to plaintiff and explained clearly.

On April 22, 1970, the plaintiff, without the prior knowledge or permission of her Supervisor, met with Mr. Sandy Mitchell, Department Supervisor of Accounting and Office Services, during a recess for coffee. Plaintiff asked Mr. Mitchell when her next appraisal would be made and complained about not receiving assignments in addition to traying of mail. Plaintiff again complained about her February appraisal. Plaintiff contends that she was free to complain to higher authority without permission or knowledge of her Supervisor during recess from work. The evidence is to the contrary. On that same day, Mrs. Lake conferred with plaintiff, again advising plaintiff of the proper procedures to be followed in processing a grievance or complaint. Mrs. Lake also advised plaintiff that her next appraisal was being processed, and further advised her that other special duties were not given to her because of her earlier rating. The subjects of this conference were incorporated into a memorandum which was placed in plaintiff's personnel file.

Plaintiff's second "Appraisal of Performance" report was completed by Mrs. Lake on April 23, 1970, and it was reviewed with the plaintiff on April 29, 1970. The second appraisal stated that the plaintiff "fully meets job requirements" in quality of work, quantity of work and attitude; that she "fully meets job requirements (plus)" in adaptability; and that she "fully meets job requirements (minus)" on dependability

and with respect to stability. During plaintiff's conference with Mrs. Lake concerning the second appraisal, plaintiff inquired about a raise in salary. Mrs. Lake explained that salary administration was handled separately. Because plaintiff would not accept this explanation, Mrs. Lake and plaintiff proceeded to meet with Mr. Frank M. Doan, Manager of the Accounting and Office Services Department. Mr. Doan explained the procedures of salary administration. After this conference with Mr. Doan, plaintiff indicated that she thought she had not always been treated fairly. Mrs. Lake noted that she felt that finally an understanding had been reached with the plaintiff, and that ary further questions could be handled by discussion between them.

The procedures for presenting complaints first to the Supervisor, and thereafter with permission of the Supervisor to higher authority, and for salary administration were reasonable, nondiscriminatory business management procedures which provided adequate and orderly access to higher authority in the management. There is no evidence that plaintiff was ever denied requested permission to present complaints to higher authority.

On April 28, 1970, plaintiff was given special duty of microfilming checks. On May 4, 1970, plaintiff was given special duty of microfilming bank trays. Both of these new assignments were in the Incoming Mail Section. On May 4, 1970, Mrs. Lake and Mr. Doan approved plaintiff for a $30.00 per month pay raise to be effective May 25, 1970.

On June 3, 1970, without the permission of any Supervisor, plaintiff again left her work station during working hours and, along with several other black employees who had also left their work stations in violation of established procedures, carefully explained to the plaintiff more than once before, proceeded unannounced into the office of Mr. Ittel, the Employee Relations Manager, thereby disrupting a conference which was taking place between Mr. Ittel and another Manager. Plaintiff and the other employees were requested to return to their work stations and discuss their complaints with their Supervisors. This first request was not complied with. Upon a second request by Mr. Ittel, the employees returned to their respective work stations.

Despite the careful and amicable oral explanations of the procedures for submitting complaints, plaintiff unreasonably contended that her interpretation of the handbook on procedures gave her authority to violate the instructions she received earlier. This contention is unreasonable and resulted in unjustifiable disruption of the work of other employees and officers. While no personal injury or property damage resulted, plaintiff's misconduct caused loss of working time and impairment of the scheduled processes of other employees.

Later in the day on June 3, 1970, Mr. Doan and Mr. Ittel conferred with the plaintiff, at which time the plaintiff claimed that she felt she was the subject of racial discrimination. They advised her that they would investigate the matter. Plaintiff was further advised of defendant's policies regarding minority groups. Plaintiff admitted acting in an emotional and irrational manner. After being advised that she was not positively assisting herself by unilaterally intruding into various management offices without permission, plaintiff stated that she had never read the employees handbook, though she testified that she read it immediately after she was notified of her employment. Her testimony on this issue is found to be true.

As a result of plaintiff's charges, on June 4, 1970, and June 5, 1970, Mr. Doan personally interviewed the remaining employees of the Incoming Mail Section respecting any possible complaints they might have, and found them to be without foundation. The evidence in this action fails to support any of the plaintiff's charges. There is no evidence of

any racial discrimination by defendant in this record. The plaintiff's complaints were groundless and the impulsive result of prejudgment by plaintiff.

On June 8, 1970, Mr. Doan determined that plaintiff's employment with the defendant should be terminated. That determination was made after a review of plaintiff's work record. That record showed that she had unilaterally left her work station on several occasions, and had often disrupted the work of other employees, including managerial personnel in a manner violative of company procedures which had been repeatedly and carefully explained to plaintiff. The decision to terminate plaintiff's employment was further made after Mr. Doan had consulted with Mr. Komin, Mr. Ittel, Mrs. Lake, and possibly other employees of the defendant. There is no evidence that any element of racial discrimination ever entered into the decision. Nor was the decision made in retaliation to plaintiff's complaints of racial discrimination.

In this connection, plaintiff relies on the testimony of Mr. Doan, that he intended to propose discipline rather than termination if he found plaintiff's complaints of racial discrimination to be true. By some reasoning, which is difficult to follow, plaintiff claims that this proves that she was terminated in retaliation to her complaints of racial discrimination made in "good faith." The evidence establishes that this contention is unfounded. The groundless complaints were not even supported by a scintilla of evidence.

Plaintiff was not at work and could not be contacted by telephone on June 8, 1970. Therefore, Mr. Doan directed a telegram to her, therein advising her that he had completed his investigation of plaintiff's charges of alleged racial discrimination; that it had been determined that such charges were unfounded; and that her employment with the defendant was terminated that date for repeated and wrongful by-passing of the proper procedures for lodging employee complaints, and for repeated disruption of work.

Notwithstanding plaintiff's charges of alleged racial discrimination, the record discloses that four of the eight promotions between January and May of 1970 in the Incoming Mail Section involved black employees. Further, the record reveals that the plaintiff was receiving a greater salary than most other employees in the mail room by virtue of her initial position, and that at least eight other black female employees in the mail room received merit raises while plaintiff was employed by the defendant on the basis of their employee appraisals. Those appraisals were superior in rating to that of the plaintiff. Moreover, the percentage ratio of minority persons employed by the defendant at its Credit Card Center on December 31, 1969, and December 31, 1970, was more than twice the percentage ratio of the minority population of the Kansas City Metropolitan area as reported by the Missouri State Employment Service.

Based on the above findings of fact, the record presented to this Court and the evidence at the trial, it is factually concluded: (1) that the plaintiff unjustifiably violated defendant's procedures by ignoring the proper company procedures for presenting grievances and complaints to authorities above her Supervisor; (2) that plaintiff was not discriminated against in her employment because of racial bias; (3) that plaintiff was not terminated because of her race or in retaliation to her complaints of racial discrimination; and (4) that plaintiff was lawfully and justifiably terminated from her employment with the defendant for the following reasons: (a) she unjustifiably and without permission left her work station during working hours on several occasions without the permission or knowledge of her Supervisor; (b) she repeatedly and intentionally violated the reasonable nondiscriminatory procedures of defendant for submitting complaints to authorities above her Super-

visor; and (c) her conduct while in the employ of the defendant was frequently disruptive to the efficient operations of the defendant's business in the Credit Card Center at Kansas City, Missouri.

All issues of admissibility of evidence have been resolved in favor of the plaintiff in making the foregoing findings of fact. There has been a total lack of proof of a *prima facie* case of racial discrimination as defined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677 (1973). There has been a failure to prove discharge in retaliation to complaints of racial discrimination. The record supports, by more than a preponderance of the evidence, the foregoing findings of fact which would be made even if the law cast the burden of proof on the defendant.

### Conclusions of Law

■ Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) was enacted by Congress " . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 155 (1974); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668, 676 (1973); Griggs v. Duke Power Co., 401 U.S. 424, 429–430, 91 S.Ct. 849, 28 L.Ed.2d 158, 163 (1971).

■ In an action under Title VII of the Civil Rights Act, the complainant has the initial burden under the statute of establishing a *prima facie* case of racial discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677 (1973). Once the Court has determined that the complainant has sufficiently met his initial burden of establishing a *prima facie* case, the " . . . burden then must shift to the employer to articulate some legitimate, nondiscriminatory rea-

son for the employee's [discharge]." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L. Ed.2d 668, 678 (1973); *Accord*, Holthaus v. Compton & Sons, Inc., 514 F.2d 651 (8th Cir. 1975); Narain v. Western Electric Company, Inc., 507 F.2d 590, 594 (8th Cir. 1974); Reed v. Arlington Hotel Co., 476 F.2d 721, 723 (8th Cir. 1973); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 426 (8th Cir. 1970).

■ In reviewing allegations of racial discrimination, a court must not be influenced in its judgment by unsupported conclusory assertions of racial discrimination and unwarranted employment demands of complainants. "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired [or retained] because he was formerly the subject of discrimination, or because he is a member of a minority group." Griggs v. Duke Power Co., 401 U.S. 424, 430–431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971). Rather, the Act requires the removal of " . . . artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." Griggs v. Duke Power Co., *supra*.

■ Employment practices which are alleged to be discriminatory or racial in nature must be viewed in the context of acceptable business purposes. In other words, "[t]he touchstone is *business necessity*." Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158, 164 (1971). (Emphasis added.) Moreover, the overriding consideration, which is shared by the employer, employee and the consumer, is " . . . efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions." McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 801, 93 S. Ct. 1817, 1823, 36 L.Ed.2d 668, 677 (1973.)

█ Applying the foregoing applicable legal standards to the evidence and facts in the case at bar, it is found and concluded that the defendant's personnel policies and procedures for presenting complaints and for salary administration, as applied to the plaintiff herein, were racially neutral, reasonable and based on justifiable and necessary business considerations.

Further, it is concluded that the determination to terminate plaintiff's employment was a racially neutral, fair and justifiable personnel decision in view of the surrounding circumstances. Naraine v. Western Electric Company, Inc., 507 F.2d 590 (8th Cir. 1974); Christian v. General Motors Corp., 341 F.Supp. 1207 (E.D.Mo.1972); affirmed without opinion, 475 F.2d 1407 (8th Cir. 1973); Bolton v. Murray Envelope Corp., 493 F.2d 191, 194 (5th Cir. 1974); Cupples v. Transport Insurance Co., 371 F.Supp. 146 (N.D.Texas 1974), affirmed, 498 F.2d 1091 (5th Cir. 1974); *see also*, Smith v. Universal Services, Inc., 454 F.2d 154, 156 (5th Cir. 1972).

█ Based on the evidence presented, it is further concluded that the plaintiff has failed to prove and the defendant has affirmatively disproved the allegations of racial discrimination. The case at bar is devoid of the type of evidence of racial discrimination which led to the granting of relief by this Court in Lowry v. Whitaker Cable Corp., 348 F.Supp. 202 (W.D.Mo.1972), affirmed, 472 F.2d 1210 (8th Cir. 1973), and Taylor v. Ford Motor Co., Civil Action No. 19015-3 (W.D.Mo. April 16, 1974). Under these circumstances, judgment should be rendered in favor of the defendant on both counts of plaintiff's complaint.

For all the foregoing reasons, it is therefore

Ordered and adjudged that the claims for relief in Count I and II of plaintiff's complaint be, and they are hereby, adjudged to be without merit. It is further

Ordered and adjudged that the plaintiff be, and she is hereby, denied all relief prayed for in the complaint.