**Andrew W. KING, Appellant,**

v.

**YELLOW FREIGHT SYSTEM, INC., Appellee.**

No. 74–2005.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1975.

Decided Oct. 7, 1975.

Rehearing Denied Nov. 6, 1975.

Edward L. Welch, Edwardsville, Ill., for appellant.

John William Buechner, Miller & Buechner, St. Louis, Mo., for appellee.

Before LAY, WEBSTER and HENLEY, Circuit Judges.

WEBSTER, Circuit Judge.

In a case tried to the court, plaintiff Andrew W. King claimed that he was discharged from employment by defendant Yellow Freight System, Inc. ("Yellow") on account of his race, in violation of Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of 42 U.S.C. §§ 1981 and 1983. The District Court[1] entered a judgment in favor of the defendant, and this appeal followed.

King, a Black, began work as a truck driver for the St. Louis Terminal of Yellow on September 28, 1968.[2] That day, King knocked down a post when the trailer his truck was pulling failed to clear a curve and struck the post. On May 24, 1969, while King was driving at 55 miles per hour, the rear pup trailer of

---

1. The Honorable H. Kenneth Wangelin, United States District Court for the Eastern District of Missouri.

2. King was hired as a "casual" or temporary driver in September, 1968, but became a permanent employee in March, 1969.

the unit he was hauling became uncoupled and turned over. King was not given a "warning letter" from his employer in connection with either of these accidents.[3]

King had another accident on June 27, 1969, when he had to apply the brakes of his unit suddenly after following another vehicle too closely. No one was injured in this accident, but some damage was done to the unit he was driving. Yellow investigated this occurrence and concluded that it was preventable. King was given a warning letter that informed him that his involvement in another preventable accident would be grounds for his discharge.[4]

On July 11, 1969, King drove his unit through a curve at an excessive rate of speed, and the rear pup trailer he was hauling turned over. King was discharged following this preventable accident and thereafter brought this action.

At the trial, King introduced evidence tending to show that some Caucasian drivers had been given more lenient treatment by Yellow, even though their traffic records were as bad as or worse than King's record.[5] He also introduced statistical evidence as to the racial composition of Yellow's staff of drivers.[6] Yellow chose to rely primarily on King's poor driving record as a legitimate reason for discharge.

In ruling in favor of Yellow, the District Court held that King had failed to prove that he had been discriminated against because of his race. In this appeal, King contends that the District Court (1) required him to meet an improper burden of proof, (2) operated under an erroneous view of the law, and (3) committed clear error with respect to its findings of fact and conclusions of law. We deal with King's contentions together.

■ Among its findings of fact, the District Court found that:

13. Plaintiff failed to meet its burden of proof which requires plaintiff to produce a preponderance of the evidence establishing a pattern or practice of racial discrimination in defendant's discharge policies.

We agree with appellant that this is not a correct statement of the applicable law. This was an individual discrimination case, not a claim of class discrimination based upon a pattern and practice. In *Marquez v. Omaha District Sales Office,* 440 F.2d 1157, 1161 (8th Cir. 1971), we held that although evidence of "pattern discrimination" may serve to support an individual's claim, "[a]llegation of class injury is not necessary to show violation of the statute." *See also Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970). Nevertheless, in an individual employment discrimination case, "the burden is on [the plaintiff] to affirmatively prove racial discrimination . . . ." *Naraine v.*

3. When a Yellow driver has an accident, the company investigates the circumstances of the occurrence; and if it determines that the driver could have prevented the accident, it issues a warning letter. Under the terms of its contract with the Teamsters Union, Yellow can discharge an employee who receives two warning letters within a nine month period.

4. *See* note 3, *supra.*

5. Plaintiff introduced evidence to show that at least three Caucasian drivers were treated more leniently in that a second preventable accident did not result in their discharge. In some cases, letters of discharge were issued and then withdrawn and warning letters were substituted. Yellow's explanation is that a number of discharges were overturned at grievance proceedings pursuant to the National Master Freight Agreement under which union members constitute 50% of the voting members of the grievance committee, and a majority vote of the members of the committee is necessary to sustain a discharge. The implication that the union failed to support King at his grievance hearing to the same extent as it supported white grievants is a serious one, *see Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); but it is not a matter which we can deal with here since the union is not a party defendant in this case.

6. In March, 1969, after King was hired by Yellow, the company had in its employ at the St. Louis terminal 227 Caucasians, 2 Blacks, and 1 Indian as over-the-road drivers.

*Western Electric Co.,* 507 F.2d 590, 593 (8th Cir. 1974).

■ The significant finding of the District Court was that King's discharge was "proper, and based upon the reasonable inference that [King] was a habitually negligent driver." Even though we might have found that King did present some evidence of racial discrimination had we been the trier of fact, we cannot say that the District Court's conclusions that King failed to show any viable example of discrimination against him on account of his race and that Yellow was justified in discharging King because of his poor driving record are based upon clearly erroneous findings.[7] *See Naraine v. Western Electric Co., supra;* Fed.R. Civ.P. 52(a).

■ Appellant argues that the circumstances of his discharge served to shift the burden of proof to his employer to show nondiscrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[8] That case has doubtful application in a discharge situation, and it is in any event of no value to appellant in this case since a legitimate nondiscriminatory reason— King's poor driving record—has been found to be the true reason for the discharge. *See Naraine v. Western Electric*

*Co., supra,* 507 F.2d at 594. *See also Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■■ Nor does appellant's use of statistics[9] to support his case compel a different result. Statistics may be used to prove a claim of racial discrimination in a class action, *see Reed v. Arlington Hotel Co.,* 476 F.2d 721, 723 (8th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Parham v. Southwestern Bell Telephone Co., supra,* 433 F.2d at 426, but this case involves no class claim.

Although statistical evidence of a pattern or practice of discrimination is of probative value in an individual discrimination case for the purpose of showing motive, intent, or purpose, *cf. Marquez v. Omaha District Sales Office, Ford Division of Ford Motor Co.,* 8 Cir. 1971, 440 F.2d 1157, it is not determinative of an employer's reason for the action taken against the individual grievant.

*Terrell v. Feldstein Co.,* 468 F.2d 910, 911 (5th Cir. 1972). Here, as in *Terrell,* the record contains ample evidence to support the conclusion that King was discharged for nondiscriminatory reasons.

The judgment of the District Court is affirmed.

---

7. King contended that the accidents in question were not preventable by him and testified at length concerning them. The District Court found this testimony to be lacking in credibility. We accord considerable deference to the findings of the District Court on matters of credibility. Fed.R.Civ.P. 52(a). *See also Snodgrass v. Nelson,* 503 F.2d 94, 96 (8th Cir. 1974); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2586 (1971). Moreover, this testimony would have had probative value only if it had tended to show that the reason given for the discharge was a mere pretext, since evidence that the accidents were not preventable (and hence that the discharge was not justified under the labor contract) would alone be insufficient to support a charge of racial discrimination.

8. The Supreme Court held that if a complainant in a Title VII action shows "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications", he will have established a prima facie case of employment discrimination and the burden shifts to the employer to show some nondiscriminatory reason for its rejection of the complainant. 411 U.S. at 802, 93 S.Ct. at 1824.

9. *See* note 6, *supra.*