Betty **GARRETT**, Appellant,

v.

**MOBIL OIL CORPORATION**, Appellee.

No. 75–1457.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1976.
Decided March 4, 1976.

William H. Pickett, Kansas City, Mo., for appellant.

Harry P. Thomson, Jr., Kansas City, Mo., for appellee; Fred Wilkins and Jack L. Campbell of Shughart, Thomson & Kilroy, Kansas City, Mo., on brief.

Before MATTHES, Senior Circuit Judge, and HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Betty Garrett brought this action against her former employer, Mobil Oil Corporation (Mobil), under 42 U.S.C. § 2000e et seq. Garrett alleged her employment with Mobil was terminated because of her race (black) and because she asserted her rights under the statute. The district court denied relief reported at 395 F.Supp. 117 (W.D.Mo.1975). In this court Garrett has dropped the allegation that she was discharged because of her race, but appeals on the ground that she was fired for protesting racial discrimination which she in good faith believed Mobil was practicing.

Garrett was hired on August 18, 1969, to work in Mobil's Credit Card Center in Kansas City. The Center bills and collects credit card accounts throughout the country. In October, 1969, Garrett transferred to the Center's incoming mail room.

In early February, Garrett's supervisor, Jerry Eklund, told her that her work was not up to standard and she would have to improve. She complained about the way the mail room was being run and stated her belief that she was the victim of racial discrimination. Eklund attempted to explain the promotions of some white women whom Garrett felt should not have been promoted ahead of her. On February 13, 1970, Eklund discussed an employee appraisal with plaintiff in which he indicated that she barely met the requirements of her job.

On March 11, 1970, she again spoke with Eklund, questioning the accuracy of her unfavorable work records and asking for better assignments. Eklund indicated that she would not be assigned to other work until her performance improved. Shortly thereafter Eklund was promoted to another department.

On March 18, Garrett discussed her unfavorable February appraisal with her new supervisor, Beverly Lake. Lake explained to her that her work was still not satisfactory. After discussing her appraisal with Lake, and without Lake's permission or knowledge, Garrett left her work station at least twice and attempted to see Mr. Fox, the manager of the Center, and the Center Manager of Operations, Mr. Fish. Mr. Fox was not in, and on both occasions when she attempted to see Fish, Fish's secretary told her that he was in a meeting, and she should contact her supervisor. Later on the same day, Garrett left her work station a third time without her supervisor's knowledge and went to Mr. Ittel's office. Ittel was the Center's Employee Relations Manager, and was conferring with Beverly Lake, Garrett's supervisor. Ittel's secretary told the plaintiff she should return to her work station, to which Garrett replied: "I'm not removing my ass from this office until I see Mr. Ittel." At this point Lake came out of Ittel's office and persuaded Garrett to return to her work area. The same day Lake informed the plaintiff that the proper procedure to follow if she wished to speak to superiors in the Center was to ask her supervisor to make an appointment. Garrett said she did not realize that was the correct procedure until Lake explained it. Garrett told her supervisor that she was fed up with the way the incoming mail room was run, especially the way her supervisors watched her and picked on her. Lake discussed this complaint, and felt that Garrett was satisfied at the conclusion of their conference.

On April 22, 1970, Betty Garrett spoke with Sandy Mitchell, Supervisor of Accounting and Office Services, during her coffee break. This was without her supervisor's knowledge. Her complaint was

again about work assignments and her February evaluation. Mitchell apparently reported this to Beverly Lake. Lake met with the plaintiff, again emphasizing that this was not the proper procedure for registering grievances, and told her that she should speak to her supervisor first about any complaints. Garrett was also told by her supervisor that she was not given other work assignments because of her prior unsatisfactory appraisal, but a new one would soon be prepared.

April 29, 1970, a new employee appraisal, prepared by Lake, was discussed with the plaintiff. It indicated she now fully met job requirements, although her "attendance and punctuality need[ed] some improving;" but the "factor most needing improvement" was "[t]endency to be untactful." At this April 29 conference Garrett inquired about a raise, but was not satisfied by Lake's explanation of the criteria. At that point Lake made an appointment for the two of them to see the Manager of the Accounting and Office Services Department, who confirmed the supervisor's explanation.

At the end of April and early in May, plaintiff began to receive other work assignments, which she had sought earlier. May 4, 1970, a raise to be effective May 25 was approved for her. She testified at trial that she knew she was up for a raise but was never told it had been approved.

On June 3, 1970, without her supervisor's knowledge, Garrett and several other black women left the mail room and went to Mr. Ittel's office, where he was meeting with another executive of the company. Plaintiff and the others demanded to see Mr. Ittel; he came out of his office and asked them to leave. The other women left when asked but he had to repeat his request before Garrett would leave. Later that day Ittel met with Garrett and the Manager of the Accounting and Office Services Department, Frank Doan. Garrett complained that she and other blacks in the mail room were being discriminated against, and was told that this would be investigated. For the next two days Doan conducted an investigation, during which all of the other mail

room employees were interviewed. As a result of his investigation Mobil concluded there was no racial discrimination in the mail room. On Monday, June 8, Garrett was not at work due to illness. After consulting with others, Doan decided to fire her. He was unable to reach her by telephone, and therefore the following telegram was sent.

> I have been unable to reach you by phone today so I as sending you this telegram. I have completed my investigation of your charges of alledged [sic] discrimination made last Wednesday, June 3 and find them unfounded. Your employment with Mobil Oil Corp. has been terminated effective 6–8–70. The reason for termination is your repeated violation of by-passing your supervisv [sic] in presenting complaints to management and disrupting work. * * *

F. M. Doan—D. [sic] H. Lake

At trial the defendant also stated plaintiff was fired because she repeatedly left her work area without permission.

The case was tried without a jury, and the district judge found the facts to be as related above. He also found that plaintiff was not discharged because of race or her complaints of racial discrimination,[1] but that she was properly discharged for the reasons stated by the defendant: leaving her work area, disobeying regulations in presenting her complaints to management, and disrupting operations.

Garrett now contends the findings in the district court were clearly erroneous and that her conduct was not disruptive as a matter of law.[2] She contends that her attempts to see top management were justified because her supervisors had ignored her complaints of racial discrimination and requests to see higher ranking officials.

Garrett also points out that the employee handbook she was given when she began at Mobil states: "While your immediate supervisor should be the first person you contact to resolve a problem, you may take it to higher levels of supervision if your Supervisor's decision does not satisfy you." She denies ever being told by Lake that she would have to go through her supervisor and make an appointment to see higher ranking officials. Her second argument is that she was not disruptive because she destroyed no property, assaulted no one and broke no law.

In a Title VII case the plaintiff must initially establish a prima facie case that defendant has violated the Act. The burden then shifts to defendant to show a valid reason for the action, and plaintiff is then afforded an opportunity to show that defendant's asserted reason is a mere pretext. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668, 677, 678 (1973). We assume for purposes of this opinion that Garrett met her initial burden of establishing a prima facie case; however, the judge's findings—that she was discharged for the reasons stated by Mobil and these reasons were not pretext are supported by substantial evidence and we cannot say they were clearly erroneous. *Gillin v. Federal Paper Board Co.,* 479 F.2d 97, 101 (2d Cir. 1973); *see Green v. McDonnell Douglas Corp.,* 528 F.2d 1102 (8th Cir. 1976); *King v. Yellow Freight System,* 523 F.2d 879, 882 (8th Cir. 1975); *Naraine v. Western Electric Co., Inc.,* 507 F.2d 590, 593 (8th Cir. 1974); Fed.R.Civ.P. 52(a). Certainly an employer can fire a worker who refuses to obey reasonable regulations, leaves the work area without permission, and barges in on conferences and meetings of managerial per-

1. Garrett no longer contends that her employment was terminated because of race, so we have not closely examined that issue. We note in passing, however, that the evidence introduced concerning the hiring, salary and promotions of blacks in the mail room compared to whites would seem to negate any inference of discrimination. *See Garrett v. Mobil Oil Corp.,* 395 F.Supp. 117, 123 (W.D.Mo.1975).

2. Garrett also contends that the case was unduly delayed. We have previously addressed this issue in *Lowry v. Whitaker Cable Corp.,* 472 F.2d 1210, 1211 (8th Cir. 1973), and we adhere to the views expressed therein. However, the plaintiff does not show how she may have been injured by this delay, and we do not regard it as a basis for relief.

sonnel. The testimony of her supervisors contradicted her allegations that her complaints of racial discrimination and requests to see her superiors were ignored, and the district judge believed these witnesses instead of Garrett.

■ Garrett's argument that her conduct was not disruptive as a matter of law is not persuasive. Actions which are neither illegal nor physically damaging to persons and property may be disruptive, and constitute valid reason for discharge. *See, e. g., Smith v. Universal Services, Inc.,* 454 F.2d 154, 156 (5th Cir. 1972). We agree that plaintiff's conduct was unnecessarily disruptive to efficient operations of the defendant.

The judgment of the district court is affirmed.