606 P.2d 458

**Donna BOWLES, Plaintiff-Appellant,**

v.

**Marshal T. KEATING and Moscow Public School District No. 281, Defendants-Respondents.**

**No. 12524.**

Supreme Court of Idaho.

Sept. 11, 1979.

Rehearing Denied Feb. 12, 1980.

810

Allen V. Bowles, Moscow, for plaintiff-appellant.

Cope R. Gale, Moscow, for defendants-respondents.

DONALDSON, Chief Justice.

Plaintiff-appellant, Donna Bowles (Bowles), brought a claim for relief in district court in which she alleged that the defendants-respondents, Marshal T. Keating, Superintendent, and the Moscow Public School District 281 (school district), refused her employment for a vice principal position as a result of sex discrimination in violation of I.C. § 67–5909. Following trial, the trial court found that the school district did not hire Bowles because of "her apparent lack of administrative ability and her failure to relate well to others," that Bowles was not the most qualified applicant for the job, and that the school district rejected all nine official applicants and instead hired a teacher from the Moscow Junior High School for the vice principal position. From these findings the court concluded that the school district's hiring process was not unreasonable, that the school district discriminated against all nine applicants but that such discrimination was not based on sex and that there were justifiable reasons for the school district to refuse to hire Bowles. Bowles then brought this appeal. We reverse and remand for a new trial.

The facts of this case are largely uncontested, and it is only the conclusions which flow from the facts which are in controversy. In the spring of 1973, there was an opening for the position of vice principal at Moscow High School. The school district gave notice of that opening to colleges in the Pacific Northwest, California and to the Idaho State Department of Employment.

Nine applicants, including Mrs. Bowles, filed applications in response to that announcement.

Bowles' educational qualifications for the position include a Bachelor's Degree in Business Education with a minor in English and a Master's Degree in School Administration. She also held an Idaho State Certificate for Administration. In terms of experience she had spent seven years as a teacher of business subjects, such as shorthand, typing and business law. She also had taught three years in a high school of 150 students in Pierce, Idaho, then in Benton City, Washington, in a school of 500 to 700 students and after that in a high school of approximately 150 students in Deary, Idaho. For two years in the winters, Bowles had taught adult education classes in shorthand and typing.

The evidence at trial disclosed that there were four administrative positions in Moscow's secondary school system in existence at the time Bowles filed her application for the vice principal position. At the time of trial no women held those positions. Bowles was the first woman to apply for one of the administrative positions; although, at the time of trial, one other woman had applied for a position. Defendant Keating did not recommend either Bowles or the subsequent applicant for a position.

The evidence also indicated that defendant Keating and a John Swartz, then the principal at Moscow High School, screened the nine applications submitted and interviewed four to six of the nine applicants, including Mrs. Bowles. Those interviews were unstructured in nature. Neither interviewer formulated any standardized written questions for the interviews. Nor did either take any formal notes of the interviews. Defendant Keating testified that he and Swartz utilized no objective tests or standards to evaluate those interviewed. In the main, they evaluated the applicants' responses subjectively.[1] Upon completion of the interview process, Keat-

1. At trial neither interviewer could specifically recall specific questions asked at the interviews. Swartz testified that all he could specif-ically remember about Bowles' interview was that she did not go into enough detail in response to his questions—whatever they were.

ing and Swartz decided not to hire any of the nine applicants and instead offered the position to a man who had never filed an official application for the position and did not hold an Idaho Administrator's Certificate.[2]

As specifically relating to Bowles and the reasons for her rejection for the position, defendant Keating testified that in his opinion she lacked direct experience in the supervising of other teachers. He also expressed concern that because she had previously worked in smaller schools, she would be unfamiliar with computerized scheduling and grading. He also felt that the fact that Bowles' training was primarily in the business field might be a handicap in her supervising others in other academic areas. Finally, Keating, based on information from previous employers, believed that Bowles had difficulty in relating to others in the area of human relation skills. Swartz testified that he formulated his impressions of Bowles primarily from the interview. It was his opinion that she was weak in the area of working with discipline problems, as well as in the area of supervision of the instruction of teachers. A former supervisor of Bowles testified that while she thought Bowles was a good teacher and despite the fact that she had seen Bowles operate in a supervisory capacity only occasionally, she did not think Bowles would make a good administrator.

Based on the above evidence the trial court held for the defendant. On appeal, Bowles asserts that the trial court did not adhere to a correct order and allocation of proof at trial; that the evidence does not support the findings and conclusions of the trial court relating to the justifiable reasons

for the rejection of her application: specifically, her lack of administrative ability and her inability to relate to others; and that the school district erroneously judged the applicants on the basis of subjective evaluations rather than using objective standards.

We point out initially that this action does not involve an asserted violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a)). Neither does this action allege the violation of any of Bowles' constitutional rights under either the United States or Idaho Constitution. *See Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

Idaho Code § 67–5909 provides:

"Acts prohibited. It shall be a prohibited act to discriminate against a person because of, or on a basis of, race, color, religion, sex or national origin, in any of the following:

(1) For an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to compensation or the terms, conditions or privileges of employment . . . . ."

This provision clearly indicates the legislative intent to prohibit discrimination in employment practices in Idaho on the basis of sex. *Idaho Trailer Coach Association v. Brown,* 95 Idaho 910, 523 P.2d 42 (1974). In this respect I.C. § 67–5909 is a parallel state statute to Title VII of the Civil Rights Act of 1964. However, this Court has not had occasion to determine the necessary quantum of proof and applicable standards for adjudication of claims of statutorily proscribed discrimination on the basis of sex.

2. At trial, the trial judge commented to defendant Keating that it appeared to him that Keating had intended to hire the uncertified individual all along. The trial judge based this observation partially on the fact that Keating had signed a statement after reviewing the nine official applications to the effect that no certified person was available for the position even though Mrs. Bowles was certified. Keating denied any such intention. He then noted this individual's qualifications which in his, Keating's mind, better qualified him as an administrator than Mrs. Bowles:

"He had successfully completed training as a jet flight pilot with the United States Air Force and I felt that that experience had given him a good deal of leadership training. A good deal of experience in supervision of others. Good deal of training in administrative responsibilities that would be very similar to a position in school administration. I personally felt that that was a strong plus factor in his background for the position we were considering for."

Many federal courts, on the other hand, have determined proof requirements and standards for adjudication under Title VII. Further, the state courts which have had occasion to construe their discrimination statutes have done so on the basis of the quantum of proof and standards promulgated in the federal cases dealing with alleged Title VII sex discrimination violations. *See Peper v. Princeton University Board of Trustees*, 151 N.J.Super. 15, 376 A.2d 535 (1977); *General Electric Corp. v. Commonwealth*, 469 Pa. 292, 365 A.2d 649 (1976); *Ellingson v. Spokane Mortgage Co.*, 19 Wash.App. 48, 573 P.2d 389 (1978). Four states have expressly adopted the federal quantum of proof and standards in sex discrimination cases. *See State Fair Employment Practices v. Hohe*, 53 Ill.App.3d 724, 11 Ill.Dec. 158, 368 N.E.2d 709 (1977); *Wheelock College v. Massachusetts Commission against Discrimination*, 371 Mass. 130, 355 N.E.2d 309 (1976); *Danz v. Jones*, 263 N.W.2d 395 (Minn.1978); *Scarborough v. Arnold*, 379 A.2d 790 (N.H.1977).

▪ Federal and state courts dealing with discrimination cases have recognized that "proof of unlawful discrimination rarely can be established by direct evidence and that an employer's seemingly arbitrary or pretextual explanation for a particular hiring judgment should not be permitted to justify conduct which is in fact unlawfully discriminatory." *Wheelock College v. Massachusetts Commission against Discrimination, supra* 355 N.E.2d at 314. Thus, while we acknowledge that the ultimate burden of persuasion on the issue of discrimination remains with the complainant, *Board of Trustees of Keene State College v. Sweeney*, 569 F.2d 169 (1st Cir. 1978), we accept the principle that a complainant may prove a prima facie unlawful discrimination case without proving an employer's intent to discriminate, thereby shifting the burden of producing evidence to the employer to give a lawful explanation for its treatment of the complainant. We therefore adhere to

and are guided by the quantum of proof and standards promulgated in discrimination cases arising under Title VII.

▪ Under a Title VII analysis, once a plaintiff has carried the burden of producing evidence as to certain facts, certain presumptions arise in that plaintiff's favor. Without proving an employer's intent to discriminate, a discrimination plaintiff may make a claim for relief under either the "disparate treatment" theory of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or the "disparate impact" theory of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *See generally* B. Schlei & P. Grossman, Employment Discrimination Law 1–12 (1976). Either theory may be applied to a particular set of facts. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In this case Bowles has attempted to utilize both theories.

▪ To establish a prima facie case of illegal discrimination under the "disparate impact" theory, a plaintiff need only prove that an employer's policies and practices which are neutral on their face and intent, nevertheless discriminate in effect against a particular group. *International Brotherhood of Teamsters v. United States, supra; Griggs v. Duke Power Co., supra*. Thereafter, an employer must shoulder the burden to show a business necessity for the use of the policies or practices challenged. *Griggs v. Duke Power Co., supra*.

▪ To establish a prima facie case of discrimination under the "disparate treatment" theory, a plaintiff must show (1) that she belongs to a protected class, (2) that she applied and was qualified for a job for which the employer was seeking applicants, (3) that despite her qualifications, she was rejected, and (4) that following her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[3]

3. While there has been some suggestion that the order, nature, and burden of proof prescribed by the United States Supreme Court in

*McDonnell Douglas Corp. v. Green, supra*, a racial discrimination case under Title VII, is inapplicable to sex discrimination cases, the

McDonnell Douglas v. Green, supra; Peters v. Jefferson Chemical Co., 516 F.2d 447 (5th Cir. 1975). At this point, the burden shifts to the employer "to articulate some legitimate nondiscriminatory reason for the employee's rejection." McDonnell Douglas v. Green, supra 411 U.S. at 802, 93 S.Ct. at 1824.

 In attempting to establish her "disparate impact" theory, Bowles relied upon employment statistics drawn from the Moscow School District. Proof of significant statistical disparity may be used to create a prima facie case of discrimination. See, e. g., Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). See generally, B. Schlei & P. Grossman, Employment Discrimination Law 1147–96 (1976). Bowles asserts that since no woman has been hired for secondary administrative positions in the Moscow School District, such is a statistical imbalance within the group hired by the employer and is sufficient to create a prima facie case. We disagree. Such conclusion might appropriately be drawn if the statistical base relied on were larger, but here the small number of positions in the district (4), coupled with the small numbers of female applicants (2), precludes the inference that the lack of female administrators is attributable to discrimination, and not chance. See International Brotherhood of Teamsters v. United States, supra; Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); Robinson v. City of Dallas, 514 F.2d 1271 (5th Cir. 1975). See generally, Note, Employment Discrimination: Statistics and Preferences Under Title VII, 59 Va.L.Rev. 463 (1973). We note a lack of evidence in the record indicating the percentage of qualified secondary administrators who are women. As to assumptions which may be drawn in the absence of such evidence, see International Brotherhood of Teamsters v. United States, supra; Mayor

of Philadelphia v. Educational Equality League, supra; Robinson v. City of Dallas, supra; Hester v. Southern Railway Co., 497 F.2d 1374 (5th Cir. 1974). See generally, Note Title VII and Employment Discrimination in "Upper Level" Jobs, 73 Colum.L. Rev. 1614 (1973); Note, Employment Discrimination: Statistics and Preferences Under Title VII, 59 Va.L.Rev. 463 (1973). Here, we hold that Bowles did not make a prima facie case based upon the "disparate impact" theory.

Bowles also asserts that she established a prima facie case of discrimination under the "disparate treatment" theory. McDonnell Douglas v. Green, supra. We agree that Bowles did make out a prima facie case under those standards. This is not dispositive of the case, however. When a plaintiff establishes such a prima facie case, the burden of producing evidence then shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection. As the United States Supreme Court recently stated in Furnco Const. Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978):

> "A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.

. . . . .

> "When the prima facie case is understood in light of the opinion in McDonnell Douglas, it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. . . . To dispel the adverse inference from a prima facie showing under McDonnell Douglas, the employer need only 'articulate some legitimate nondiscriminatory reason for the employee's rejection.'"

United States Supreme Court in Edwin L. Wiegand Co. v. Jurinko, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), has indicated that the proof requirements in McDonnell Douglas are

applicable to sex discrimination cases. See also Jacobs v. Martin Sweets Co., Inc., 550 F.2d 364 (6th Cir. 1977).

Hence in the instant case the burden of producing evidence which shifted to the school district was that of proving that the decision not to hire Bowles was based on legitimate nondiscriminatory considerations. It is the nature of the burden which shifts to the defendant in this case and the proof required once the burden does shift which causes us to reverse the decision of the district court and remand this case for a new trial.

■ In the abstract, shifting the burden of producing evidence to the employer may be no burden at all where, as here, the employer utilizes subjective and unstructured standards to make an employment decision. The record before us clearly indicates that the school district based its decision not to hire Bowles on subjective and unstructured standards. Bowles asserts that such standards can be easily manipulated to disguise discrimination. We certainly do not dispute the validity of this assertion. But it is also true that decisions of hiring or promotion in upper level jobs may of necessity involve assessments of such abstractions and intangibles, as leadership, personality, ability to relate to others and supervisory ability, which are difficult, if not impossible, of realistic measurement by objective technique alone. *See Rogers v. International Paper Co.*, 510 F.2d 1340 (8th Cir. 1975), *vacated and remanded on another issue*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), *opinion on remand*, 526 F.2d 722 (1975); Note, Title VII and Employment Discrimination in "Upper Level" Jobs, 73 Colum.L.Rev. 1613 (1973). We note that subjective hiring procedures are not per se violative of Title VII. *Rogers v. International Paper Co., supra; Hester v. Southern Railway Co., supra; see generally*, B. Schlei & P. Grossman, Employment Discrimination Law 166–81 (1976).

■ But we are of the opinion that where, as in this case, an employer utilizes subjective and unstructured standards in the hiring process, that employer, in addi-

tion to presenting legitimate nondiscriminatory reasons for an employment decision, must produce credible evidence to show that the reasons advanced were in fact the real reasons. *See Garrett v. Mobil Oil Corp.*, 531 F.2d 892, 895–896 (8th Cir. 1976); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975); *Peters v. Jefferson Chem. Co., supra; Holthaus v. Compton & Sons, Inc.*, 514 F.2d 651, 653–654 (8th Cir. 1975). If the employer does not produce such credible evidence, he has failed to rebut the plaintiff's prima facie case. The Massachusetts Supreme Court stated it this way:

"[I]f the reason given by the employer is the real reason for its action and it is a nondiscriminatory one . . . the employer has fulfilled its obligation of stating a reason and producing support for the stated reason, thus rebutting the prima facie case."

*Wheelock College v. Massachusetts Commission against Discrimination, supra*, 355 N.E.2d at 315. If the employer does produce such credible evidence, then the burden of producing evidence shifts back to the plaintiff to show that the employer's reasons for rejecting the plaintiff were in fact pretext. *McDonnell Douglas Corp. v. Green, supra.*

■ Our review of the record indicates that while the school district presented their reasons for rejecting Bowles' application—lack of administrative ability and inability to relate well with others—they failed to present credible evidence to suggest that those reasons were anything more than convenient reasons.[4]

The only evidence in the record with respect to Bowles' inability to relate well to others is the testimony of defendant Keating. He offered testimony that based on information which he had from other employers, he believed that "she might have difficulty in the area of human relation skills." While there is other testimony in the record concerning Bowles' qualifications

---

4. Given our conclusion in this regard, we do not reach the question of whether Bowles presented evidence showing that the School

District's reasons for rejecting her were mere pretext.

or lack of qualifications, there is no other testimony bearing specifically on her ability to relate well to other people.

As it relates to Bowles' administrative abilities, the record indicates that she had a more significant administrative background than the person who was hired. The trial judge himself so stated at trial. In light of this, the finding of the fact that Bowles was not the most qualified applicant for the job becomes a meaningless finding.

 We turn now to a discussion of the trial court's conclusion of law that since all nine applicants (eight men and one woman) were discriminated against, Bowles could not seek relief based on a claim of sex discrimination. The problem is that this logic effectively forces the plaintiff to show initially, contrary to the holding of *McDonnell Douglas* and *Furnco*, that the employer intended to discriminate against her on the basis of sex. The trial judge erroneously considered such a threshold showing to be essential in order for Bowles to make out a claim for relief. At trial he stated:

> "[I]t seems to me that there must be something that shows discrimination directed toward your client because she's a female. And I don't find that in the record. There's no question she was discriminated against but it seems to me she was an outsider. And I don't think you've shown anything just because she was a woman."

The fact of the matter is that because Bowles claims to have been discriminated against on the basis of sex, under I.C. § 67–5909, she has a claim for relief. The school district's rejection of the other eight applicants, all of whom were male, is irrelevant to her establishing a prima facie discrimination claim; although, it may be relevant to the school district's attempt to rebut Bowles' prima facie case.

 Where there is a claim of job discrimination by a member of the minority covered by chapter 59 of the Idaho Code, that minority member is not deprived of his or her cause of action even though a person not a part of that minority is also rejected from the same job. Quite to the contrary,

I.C. § 67–5909 opens the doors of this state's courts to a plaintiff who alleges that an employer discriminated against her/him on the basis of race, color, religion, sex or national origin with a minimum showing on his or her part. Under *McDonnell Douglas*, such a plaintiff need *only* show that: (1) that person belongs to a protected class, (2) that person applied and was qualified for a job for which the employer was seeking applicants, (3) that despite that person's qualifications, she/he was rejected, (4) and lastly, that following her/his rejection, the position remained open and the employer continued to seek applicants from persons of her/his qualifications. Once a discrimination plaintiff has made this showing, without any showing of an employer's intent to discriminate, she/he has satisfied her/his burden of proof. At that point the burden shifts to the defendant-employer to prove by credible evidence that it rejected the plaintiff's application for legitimate nondiscriminatory reasons. If the employer's reasons are legitimate nondiscriminatory ones and if they are the real reasons for the employer's actions, the employer has fulfilled its obligation of stating reasons and producing support for those reasons, thus rebutting a prima facie discrimination case.

The proper focus in this case is on the defendants' ability to rebut Mrs. Bowles' prima facie discrimination case, not on Mrs. Bowles' ability to produce evidence of the school district's intent to discriminate on the basis of sex. If the defendants successfully rebut her case, the practical effect of such a rebuttal would be that there was no discrimination on the basis of sex as a matter of law. Conversely, if the defendants fail in their burden, the effect would be to conclude that they discriminated against the plaintiff on the basis of sex in violation of I.C. § 67–5909 as a matter of law.

As is evident from the foregoing discussion of the record and of the law to be applied, this action was tried with a certain amount of confusion, as to the standards to be used to guide the litigation, the burden required of the plaintiff to establish a pri-

ma facie case and the burden upon the defendants to rebut that case. Given the confusion at trial and the resulting absence of a record which would indicate whether the trial judge found for the defendants because Bowles could not prove the school district intended to discriminate against her on the basis of sex and whether the school district did in fact rebut Bowles' prima facie showing, a new trial is in order.

We have taken the time to set out the nature of the proof required and the standards to be utilized in determining the validity of a discrimination claim under I.C. § 67–5909 in this case because it represents one of the first significant state job discrimination cases to reach Idaho courts. We have no doubt that many will follow. We have no desire to deal with these future cases in an ad hoc manner. Nor will this Court be complacent with allowing litigants in such cases to build a record for appeal in the same ad hoc manner.

This case is reversed and remanded for a new trial in accordance with this opinion. We award costs pursuant to I.A.R. 40(a).

McFADDEN, J., concurs.

BISTLINE, Justice, specially concurring.

I agree that we should utilize federal case law under Title VII to fashion the standards which, absent further governing legislation, will apply to actions brought in this state under I.C. § 67-5909. This serves to relieve our district courts of the burden of forging new law in this delicate area, and also appears to further the legislative intention as expressed in I.C. § 67-5901:

"The general purposes of this act are: (1) To provide for execution with the state of the policies embodied in the federal Civil Rights Act of 1965 [sic] and to make uniform the laws of those states which enact this act. . . . ."

I also agree that we must remand this case for a new trial, for I am unable to completely agree with the analysis contained in the dissenting opinion. That analysis fails to reduce the procedure followed here by the trial court to the category of

"harmless error." As noted by the plurality, it is evident from the trial transcript and briefs that much confusion attended the trial—not an unexpected turn of events, given the lack of guidelines for the trial court to follow. If Mrs. Bowles had no opportunity to establish that the defendant employer's articulated reasons for refusing to hire her were in fact pretextual, as appears to be the case, this alone presents sufficient reason to justify reversing for a second trial free of that infirmity. E.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Moreover, there is reason to hold that the trial court's findings of fact and conclusions of law are sufficiently confusing to warrant reversal for clarification. A trial court's findings ought to be such as to assist the appellate court in reaching a clear understanding of the basis for the decision. See Perry Plumbing Co. v. Schuler, 96 Idaho 494, 531 P.2d 584 (1975); Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414 (1962). The judge who tried this cause has since returned to private practice. It is appropriate in reversing, therefore, to remand the cause for an entirely new trial. See Walter v. Potlatch Forests, Inc., 94 Idaho 738, 497 P.2d 1039 (1972).

If the plurality advocates adopting a standard of proof to require the employer to prove his "real" reason to the exclusion of all other reasons, as the dissent maintains, however, I must disagree with that standard. The plurality states that the "employer, in addition to presenting legitimate nondiscriminatory reasons for an employment decision, must produce credible evidence to show that the reasons advanced were in fact the real reasons." This statement is followed by a reference to five cases.

As the dissent points out, there are at least two ways to read that standard set forth by the plurality. The first way is to hold that the employer must do more than merely state a reason for his decision, where such reason has no support in the evidence. This apparently is the standard the dissent would adopt. A second possible

reading is to require that the employer prove his "real" reasons to the exclusion of all other possible reasons, including those of a discriminatory nature. After a close examination of the cases cited by the plurality, I cannot agree that this more stringent standard was utilized in those cases or that it should be adopted here. I also do not believe that this was the standard that the plurality intended to adopt.

In the first case cited by the plurality, *Garrett v. Mobil Oil Corp.*, 531 F.2d 892 (8th Cir. 1976), the court merely held that there was substantial evidence to support the judge's findings that plaintiff was discharged for the reasons stated by defendant and that those reasons were not pretext. That court stated that once a prima facie case is made out by the plaintiff, the "burden then shifts to defendant to show a valid reason for the action, and plaintiff is then afforded an opportunity to show that defendant's asserted reason is a mere pretext." *Id.* at 895. This statement that defendant must "show a valid reason" can in no way be read to require him to prove his "real" reason to the exclusion of all others.

The court in *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975), stated that "[d]efendant may, of course, rebut this prima facie showing by producing evidence of objective business reasons or necessity for its failure to promote the plaintiffs. Plaintiffs, in turn, are free to show that this was pretextual." The only other relevant statement made by the court was "[a]s to the salaried positions and the use of the totem pole, it would appear that the defendant would have the burden of establishing the fundamental fairness of this approach since it is largely subjective." *Id.* Again, these two statements do not place on the employer the burden of proving the real reason to the exclusion of all others.

In *Peters v. Jefferson Chemical Co.*, 516 F.2d 447 (5th Cir. 1975), the court stated that " '[o]nce the plaintiff has made out his prima facie case we look to the defendant for an explanation since he is in a position to know whether he failed to hire a person for reasons which would not exonerate him.' " *Id.* at 450, quoting *Hodgson v. First Federal Savings & Loan Association*, 455 F.2d 818, 822 (5th Cir. 1972). The court stated that defendant had established legitimate non-discriminatory reasons, that the plaintiff had not been transferred because she had a history of back problems and the job would have required heavy weight lifting. The court's statement that it would "look to the defendant for an explanation" does not amount to a shift in the burden of proof, as opposed to the burden of going forward.

The defendant in *Holthaus v. Compton & Sons, Inc.*, 514 F.2d 651 (8th Cir. 1975), failed to establish a "legitimate, nondiscriminatory reason for the employee's rejection," but it was not because the court required him to prove his real reason. Rather he failed to show that the reason advanced was at all credible. Defendant's only evidence consisted of self-serving statements that plaintiff's work was piling up and that other employees couldn't take care of it. Furthermore, it was shown that in the past defendant had used temporary help to fill in for absentees, but defendant refused to do so in this case.

The confusion surrounding the burden of proof here was perhaps best illustrated in the final case cited in the plurality opinion, *Wheelock College v. Massachusetts Commission Against Discrimination*, 371 Mass. 130, 355 N.E.2d 309 (1976). That court stated that the employer's burden in articulating "some legitimate, nondiscriminatory reason" requires the employer to produce not only evidence of the reason for its action but also underlying facts in support of that reason. However, that court further stated that the employee then has the burden of persuasion on the issue of whether the articulated reason was in fact the real reason for the employer's actions, or merely pretextual. Later in the opinion the court also stated that "an employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or

reasons advanced were the real reasons." *Id.* at 138, 355 N.E.2d at 314. The citations after this statement showed that the court was only putting the burden of going forward on the defendant, however, not the burden of proof. The only other statement made by the court on this issue was as follows:

"[I]f the employee has proved a prima facie case of sex discrimination and the employer gives an explanation for a hiring decision which has no reasonable support in the evidence or is wholly disbelieved (and hence is transparently pretextual), the employee should prevail. On the other hand, if the reason given by the employer is the real reason for its action and it is a nondiscriminatory one, even if the commission thinks the employer's action was arbitrary or unwise, the employer has fulfilled its obligation of stating a reason and producing support for the stated reason, thus rebutting the prima facie case." *Id.* at 138–39, 355 N.E.2d at 315.

As I read this case, the employer must produce evidence to show that his stated reasons are not transparently pretextual, *i.e.,* he must set forth evidence which would reasonably justify the conclusion that the stated reasons were not merely convenient rationale. This is only a burden of going forward with sufficient evidence to rebut the prima facie case, for the ultimate burden of proof on the issue of discrimination remains with plaintiff. At no time does the burden of proof itself shift to the employer.

There appear to be two reasons why some courts, apparently aloof from the fact that the *ultimate* burden of proof remains at all times on the plaintiff, *see King v. Yellow Freight System, Inc.,* 523 F.2d 879 (8th Cir. 1975); *Naraine v. Western Electric Co.,* 507 F.2d 590 (8th Cir. 1974), seemingly place the burden of proof on the employer at this second step. One reason is simply through a linguistic error and a misunderstanding of the distinction between going forward with the evidence and having the burden of proof. *See, e.g., Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 296–98, 58 L.Ed.2d 216 (1978) (Stevens, J., dissenting). The second reason is a feeling that only the

employer knows the real reasons for his decision, and, if it is a subjective decision, it is very difficult for plaintiff to prove that it was a discriminatory reason; thus the employer should have the burden of proving that his decision was nondiscriminatory once a prima facie case is made out. This assumes, however, as the plurality here states, that "the practical effect [of defendants rebutting plaintiff's prima facie case] . . . would be that there was no discrimination on the basis of sex as a matter of law." I must disagree with this assumption that for all practical purposes the third step, where plaintiff can show pretext, is superfluous. There are ways that pretext can be shown. Plaintiff can show pretext by showing that the records relied on in support of the advanced reason "were fraudulent, inaccurate or otherwise unreliable . . . if they were intended or known to be so . . . ." *Taylor v. Safeway Stores, Inc.,* 365 F. Supp. 468 (D.Col. 1973), aff'd in part, rev'd in part on other grounds, 524 F.2d 263 (10th Cir. 1975). Plaintiff could also show sufficient pretext to take the issue to the trier of fact by showing that the reasons advanced had no bearing on plaintiff's ability to perform on the job or by showing that the person actually hired was even less qualified in those areas relied on by the employer.

The plurality opinion acknowledges that the ultimate burden of proof remains with the plaintiff. It also states that a prima facie case shifts "the burden *of producing evidence* to the employer to give a *lawful explanation* for its treatment of complainant" (emphasis added). A better reading of the plurality opinion leads to the conclusion that the standard adopted is one of producing enough evidence to show that the advanced reasons were not purely pretextual, for the plurality held that defendants had not met their burden because "[t]hey failed to present credible evidence to suggest that those reasons were anything more than convenient reasons." The plurality did not hold that defendants had not met their burden of proving that the reasons advanced were in fact the real reasons, but only that they had in effect merely stated reasons

without enough support in the evidence to rebut plaintiff's prima facie case. The statement that defendant "must produce credible evidence to show that the reasons advanced were in fact the real reasons," a statement taken from *Wheelock College, supra,* does not to my mind place the burden on defendant of proving that the reasons advanced were in fact the real reasons. It merely requires him to produce enough evidence to justify the conclusion that his reasons reasonably could have been the real reasons. That was the standard adopted by the court in *Wheelock College,* and I believe that is the standard which should be applied and that it is the standard which the plurality intended to adopt.

Although subjectiveness will always remain a part of the hiring process for many types of jobs, "[a]bsolute discretion over employment decisions where subjective race prejudice may control (perhaps even without the executive's knowledge) is no longer consistent with our law." *Abrams v. Johnson,* 534 F.2d 1226, 1231 (6th Cir. 1976). Employers would be better off, both legally and probably job-wise, if they developed reasonably objective hiring procedures and records that they could then present to the court on being charged with job discrimination.

Even if I am incorrect in this reading of the plurality opinion, moreover, it appears from reading both opinions that a majority of this Court would agree with me that the quantum and standard of proof is as follows: (1) plaintiff carries the initial burden of making out a prima facie case from which it can be inferred, "if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furno Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977); (2) defendant then must rebut that prima facie showing by producing enough evidence to show that his stated reasons are in fact credible, *i.e.,* that his decision could reasonably have been

based on the reasons set forth; and (3) plaintiff then can show that in fact the reasons stated are pretextual.

SHEPARD, Justice, dissenting.

I would affirm. In my view, the trial court's findings of fact of no illegal discrimination are *not* clearly erroneous under either state or federal standards. The federal framework for the adjudication of claims of sex discrimination is by no means settled. It is apparent that the majority is intent upon applying federal Title VII analysis to the case at bar and, in my opinion, parts of the analysis contained in the majority are either unclear or erroneous statements of federal law.

To prove a violation of Title VII of the Civil Rights Act of 1964, the plaintiff may proceed under either the "disparate treatment" theory of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or the "disparate impact" theory of *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Claims of disparate treatment are distinguishable from claims of disparate impact:

> "The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. . . . Proof of discriminatory motive, we have held, is not required under a disparate impact theory." *Int'l Brd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

I am in accord with the majority's analysis of plaintiff's claim under the disparate impact theory.

"Disparate treatment" is the most readily understood type of discrimination.

> "The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differ-

ences in treatment." *Int'l Brd. of Teamsters v. United States, supra*, at 335 n. 15, 97 S.Ct. at 1854 n. 15.

Thus, contrary to the majority, it *is* necessary for Donna Bowles to show that the defendants intended to discriminate against her on the basis of sex. *See also Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Sweeney v. Bd. of Trustees of Keene State College*, 569 F.2d 169 (1st Cir. 1978), *rev'd on other grounds*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Presseisen v. Swarthmore College*, 442 F.Supp. 593 (E.D.Pa. 1977). In recognition of the difficulty of proving intent, however, the United States Supreme Court has established a method by which a plaintiff may generate an inference of discrimination upon the showing of certain facts. *McDonnell Douglas Corp. v. Green, supra*. The four elements needed for a plaintiff to make out a prima facie case are as set forth in the majority opinion. Once the four *McDonnell Douglas* factors are met, an inference of discriminatory motive is raised. *Chavez v. Tempe Union High School Dist. No. 213*, 565 F.2d 1087 (9th Cir. 1977).

If the plaintiff carries the initial burden and establishes a prima facie case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green, supra* 411 U.S. at 802, 93 S.Ct. at 1824. *See also Furnco Constr. Corp. v. Waters, supra*. The burden which shifts is not, as the majority suggests, the burden of persuasion but, rather, the burden of going forward with the evidence. The ultimate burden of persuasion on the issue of discrimination remains with the plaintiff, who must convince the court by a preponderance of the evidence that she has been the victim of discrimination. *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (Stevens, J., dissenting); *Sweeney v. Bd. of Trustees of Keene State College*, 569 F.2d 169 (1st Cir. 1978); *Croker v. Boeing Co.*, 437 F.Supp. 1138 (E.D.Pa. 1977). If the employer articulates a reason for rejection sufficient to rebut the plaintiff's prima facie case, the trial enters a third phase not treated in the majority opinion. At this point, the plaintiff is to be "afforded a fair opportunity to show that petitioner's [the employer's] stated reason for respondent's [the employee's] rejection was in fact pretext." *McDonnell Douglas Corp. v. Green, supra* 411 U.S. at 804, 93 S.Ct. at 1825. *See also Furnco Constr. Corp. v. Waters, supra.*

The majority correctly concludes that Mrs. Bowles established a prima facie case of discrimination under the *McDonnell Douglas* disparate treatment criteria. I agree that the proper focus in this case is thus upon the defendant's ability to rebut this prima facie case. I do not agree, however, that the defendants failed to rebut the prima facie case.

In reaching its conclusion that the defendants failed to rebut plaintiff's prima facie case, the majority appears to be adopting a new standard of proof to apply to such factual situations. Under federal pattern and practice, an employer need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green, supra* at 802, 93 S.Ct. at 1824. The majority is now placing upon the Idaho employer who uses subjective hiring practices the additional burden of producing "credible evidence to show that the reasons advanced were in fact the *real* reasons." (Emphasis added.) We are not told what "real" reasons are, and how one goes about distinguishing them from some other kind. There are at least two possible ways to read this new standard. The majority may wish to emphasis that the employer must do something more than merely "state" his reasons. Under *Furnco* and *McDonnell Douglas* "the employer's burden is satisfied if he simply '*explains* what he has done' or '*produc[es]* evidence of legitimate nondiscriminatory reasons.'" *Bd. of Trustees of Keene State College v. Sweeney, supra*. It has never been the law that the employer may rebut a prima facie case by merely stating a reason which has no support in the evidence.

Another, and more logical, way to read the majority's new standard is as an imposition upon the employer to prove his "real" reason to the exclusion of all other reasons—including those of a discriminatory nature. If this be the case, a defendant employer in Idaho will be saddled with a burden more onerous than he would bear in federal court. In *Bd. of Trustees of Keene State College v. Sweeney, supra,* the Court dealt with that very issue and reversed a Court of Appeals decision which required the defendant employer to prove an *absence of discriminatory motive* because that party had greater access to such evidence. The Court noted that in *Furnco* and *McDonnell Douglas* it was stated that an employer may dispel the adverse inference from a prima facie case by simply articulating some legitimate, nondiscriminatory reason for the employee's rejection. The Court then declared that "there is a significant distinction between merely 'articulat[ing]' some legitimate, nondiscriminatory reason,' and 'prov[ing] absence of discriminatory motive'. . . . [T]he former will suffice to meet the employee's prima facie case of discrimination." 99 S.Ct. at 295. The Court also noted that placing the burden of proving the absence of a discriminatory motive on the employer,

> "would make entirely superfluous the third step in the *Furnco—McDonnell Douglas* analysis, since it would place on the employer at the second stage the burden of showing that the reason for rejection was not a pretext, rather than requiring such proof from the employee as part of the third step." 99 S.Ct. at 295 n. 1.

If this Court wishes, as it states, to follow federal law, then the proper question before us is simply whether the defendants articulated or established that there was a legitimate, nondiscriminatory reason for not hiring Mrs. Bowles. There is no justification or basis in the case law for imposing upon the defendants the obligation to prove that this was the "real" reason to the exclusion of others. To impose that additional proof burden on defendants, the majority ostensibly uses the fact that the school district used subjective hiring procedures. It must be noted in this regard that the employer in *McDonnell Douglas* also used a subjective criterion for refusing to hire the plaintiff therein. Although the Court of Appeals had said that the subjective reason would carry little weight in rebutting charges of discrimination, the Supreme Court said that it would suffice to meet the prima facie case. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. 1817. At this point, then, the sole question is whether the defendants articulated or established a legitimate, nondiscriminatory reason for not hiring Mrs. Bowles.

The district court, based upon the evidence adduced at trial, expressly found that plaintiff was not hired "because of her apparent lack of administrative ability and her failure to relate well to others." He, therefore, concluded as a matter of law that "there were justifiable reasons for the defendant school district not to hire the plaintiff." This Court can overturn the judge's decision only by ruling that it was "clearly erroneous." I.R.C.P. 52(a). This same standard is applicable to judge-tried discrimination cases in federal court. *E. g., Garrett v. Mobil Oil Corp.,* 531 F.2d 892 (8th Cir. 1976); *Causey v. Ford Motor Co.,* 516 F.2d 416 (5th Cir. 1975).

On appeal it is axiomatic that the record, the evidence, and the inferences arising therefrom are to be viewed most favorably to the respondent and in support of the findings of the trial court. *Matter of Estate of Webber,* 97 Idaho 703, 551 P.2d 1339 (1976). As to appellant's experience in administration, the testimony indicates that aside from formal education she had worked approximately seven years as a teacher of business subjects such as shorthand, typing, and business law in three different high schools. In two of them, she taught under the supervision of her husband, who was the high school principal. Two of those schools numbered approximately 150 students as contrasted with approximately 600 in Moscow high school. For two years in the winter season she taught adult education classes in shorthand

and typing under the supervision of one Andruiza. She had made application for a teaching position at Moscow high school and later for a position in administration at the University of Idaho and was not hired for either position. During 1973 and 1974, she made application for positions as Moscow junior high school vice-principal, Moscow high school vice-principal, and Moscow high school principal. She was not hired for any of these positions. Since 1973, she has worked as legal secretary for her husband.

As stated in the majority opinion, appellant was interviewed by defendant Keating and Swartz, who was then the principal at Moscow high school. Both testified that they felt Bowles lacked direct experience in the supervision over the teachers; that her experience in smaller schools would handicap her in dealing administratively with computerized scheduling and grading in a large school such as Moscow; that she had little experience in working with discipline problems; and when they checked with former supervisors of Bowles, it was reported that she had difficulty in relating to others in the area of human relation skills. That testimony was supported by the testimony of one Andruiza, a former supervisor of Bowles.

It is true, as asserted by the majority opinion, that subjective and unstructured standards were utilized in evaluating appellant's application. However, it is also true that decisions of hiring or promotion in upper level jobs may necessarily involve such abstractions and intangibles as leadership, personality, ability to relate to others, and supervisory ability, which are difficult, if not impossible, to realistically measure by objective techniques alone. *See Rogers v. Int'l Paper Co.*, 510 F.2d 1340 (8th Cir. 1975), vacated and remanded on another issue, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), opinion on remand, 526 F.2d 722 (8th Cir. 1975), Note, *Title VII and Employment Discrimination in "Upper Level" Jobs*, 73 Colum.L.Rev. 1614 (1973). Subjective hiring procedures are not *per se* violative of Title VII, *Rogers v. Int'l Paper Co., supra; Hester v. Southern Railroad Co.*, 497 F.2d 1374 (5th Cir. 1974).

In my judgment, the record here supports the finding of the trial court "that the plaintiff was not hired by the defendant, Moscow School District, as the high school vice-principal because of her apparent lack of administrative ability and her failure to relate well to others." Thus, evidence *was* adduced to show a legitimate nondiscriminatory reason. Thereafter, appellant had full opportunity to produce evidence to show that defendant's refusal to hire was, in fact, sexually premised. This she did not do. I would hold that since the trial court's ruling was not clearly erroneous, we are bound to accept it. I.R.C.P. 52(a).

In my judgment, the majority opinion ignores the record which clearly supports the ruling of the trial court and appears to be influenced by two additional factors. The first appears to be that the trial court did not expressly recognize that appellant had established a prima facie case of sex discrimination. If the trial court had dismissed plaintiff's case at the end of her case in chief or ended his analysis with the simple conclusion that she had not met her burden of establishing a prima facie case, I, too, would vote for a reversal. However, the purportedly erroneous statement of the trial judge contained in the majority opinion occurred at the conclusion of the entire trial, and since the trial court at that time had heard evidence of legitimate reasons for the refusal to hire, I would hold that he was correct in suggesting at that point the necessity of tendering evidence showing that the hiring decision was sexually premised. Appellant was not halted at the "threshold." Federal courts have held that any error in classifying plaintiff's proof as insufficient to create a prima facie case is harmless error. *See, e. g., Smith v. Liberty Mut. Ins. Co.*, 569 F.2d 325 (5th Cir. 1978); *Peters v. Jefferson Chem. Co.*, 516 F.2d 447 (5th Cir. 1975).

The second factor which I view as influencing the majority opinion is the trial court's conclusion "that all nine of the applicants for the job of high school vice-principal were discriminated against, but said

discrimination was not based on sex, and said discrimination was not illegal." That conclusion is probably substantiated in the record as a desire on behalf of the defendants-respondents to hire a current employee of the school district, or an "insider." The majority opinion *finds* that appellant "had a more significant administrative background than the person who was hired." I would disagree with that *finding* of the majority. I would view the record otherwise and only note that the trial court made no such finding. The record sustains, and I would uphold, the finding of the trial court that the appellant was not the most qualified of the nine applicants for the job regardless of what her qualifications might be when compared to those of the "insider." The conclusion to be drawn from this is that a male who was the most qualified of the applicants, as well as Mrs. Bowles, appear to have been discriminated against in favor of an "insider" who also happened to be a male. While such may be offensive to our abstract notions of fair play, I would hold that the trial judge was correct in ruling that it was not an *illegal* form of discrimination. Discrimination is not unlawful unless the form of discrimination is constitutionally or statutorily forbidden. B. Schlei & P. Grossman, Employment Discrimination Law 15 (1976). A practice of "cronyism" or "insider" hiring may, in some instances, be facially neutral, but also have a discriminatory impact. *See Local 53 of Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers v. Vogler*, 407 F.2d 1047 (5th Cir. 1969); *Lee v. City of Richmond*, 456 F.Supp. 756 (E.D.Va. 1978). However, I find no such evidence of discriminatory impact in the case at bar.

I would affirm the decision of the lower court.

BAKES, J., concurs.