BURDICK, Chief Justice.
This appeal arises from Elmore County’s decision terminating its employee, Cherri Nix (“Nix”), without providing her a pretermination hearing pursuant to the Elmore County Personnel Policy (“ECPP”). Nix filed suit in Elmore County alleging, among other claims, that Elmore County violated the ECPP and breached the covenant of good faith and fair dealing when it terminated her employment without giving her a pretermination hearing. The district court granted Elmore County’s summary judgment motion on the basis that Nix was an at-will employee subject to termination at any time and for any reason, and that Nix failed to show a contractual relationship with Elmore County that would entitle her to a pre-termination hearing. Nix appeals that decision. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
Cherri Nix worked as a custodial employee for Elmore County from June 1, 2007, until April 30, 2012, when her supervisor terminated her employment for numerous alleged instances of poor performance. Nix did not receive a pre-termination hearing prior to her dismissal. Consequently, Nix filed a complaint in district court alleging, among other claims, a breach of employment contract. Elmore County’s refusal to grant Nix a hearing is the basis of this appeal.
Early in 2011, Nix’s supervisor grew concerned over Nix’s job performance and addressed these concerns with Nix, requesting her to maintain daily task logs for the supervisor’s review. Nix’s performance improved in some areas over the first few months, but still required additional improvement.
In December of 2011, Nix’s new supervisor, Vence Parsons (“Parsons”), gave Nix a list of custodial and maintenance duties and maintained a daily log to track Nix’s performance. On February 1, 2012, Parsons gave Nix a Notice of Disciplinary Action— Notice of Last Chance (“Notice of Disciplinary Action”), detailing numerous alleged instances of poor job performance and falsified time cards. The Notice of Disciplinary Action advised Nix that Parsons was placing her on probationary status for one year and that she was, and would remain, an at-will employee during her probation. The Notice of Disciplinary Action further informed Nix that if she failed to meet the goals set forth in the notice or failed to show improvement in her progress reports, she would be subject to termination at any time during the probation.
On April 30, 2012, Parsons gave Nix a Notice of Termination, which terminated Nix’s employment with Elmore County. At that time, Parsons reminded Nix that she was an at-will employee subject to termination with or without cause at any time during her probation period. The Notice of Termination explained that Nix’s termination was due to continuing problems with her job performance. Furthermore, the Notice of Termination informed Nix that she could meet with the Elmore County Board of Commissioners (the “BOCC”) if she felt her termination was based on unlawful discrimination, but noted that the BOCC would not consider any other issues pertaining to her termination.
Nix subsequently requested a hearing before the BOCC. Elmore County then sent Nix a Notice of Hearing, which stated, in relevant part: “Please be advised that you were an at-will employee, and as such are not entitled to a hearing regarding the reasons for your termination. The Board will not discuss performance-related issues.”
Shortly thereafter, Elmore County’s prosecuting attorney sent Nix a letter stating that *313 Nix was an at-will employee on probation when she was terminated, and was therefore subject to termination at any time without a pre-termination hearing. The letter reiterated to Nix that her June 2012 hearing in front of the BOCC would only allow her to present discrimination claims she had against the County. It stated that the BOCC would not entertain any legal authority in support of her request for an evidentiary hearing.
Nonetheless, at the June 2012 discrimination hearing, Nix requested the BOCC consider conducting a hearing so she could contest performance-related matters and present her ease as to why she should not be terminated. On June 18, 2012, the BOCC issued its written decision confirming Nix’s termination and denying her request for a hearing.[1] The BOCC reasoned that probationary employees are at-will employees and are not entitled to pre-termination hearings.
On December 11, 2012, Nix filed a complaint against Elmore County alleging, among other claims, that Elmore County: (1) violated the covenant of good faith and fair dealing when it terminated Nix’s employment without providing her a pre-termination hearing; and (2) terminated Nix in violation of her “for cause” employment status under the ECPP.
Nix moved for partial summary judgment on January 23, 2013. On April 16, 2013, the district court issued a memorandum decision and order denying that motion. The district court concluded that Nix was an at-will employee and therefore subject to immediate termination at any time. The court reasoned that Nix was not entitled to a pre-termination hearing because she failed to establish an employment contract limiting the reasons for which Elmore County could terminate her employment. The district court also noted that “[t]he existence of a grievance procedure in an employee policy manual is insufficient to overcome the presumption of employment at-will and create an issue of fact for trial.” Nix then moved the court for permission to appeal that decision and for a Rule 54(b) certification. The district court denied both motions.
On June 25, 2013, Elmore County moved for summary judgment based on the district court’s April 16, 2013 decision that Nix: (1) was an at-will employee subject to immediate termination and not entitled to a pre-termination hearing; and (2) failed to set forth any genuine issue of material fact as to the status of her employment and her claims. The district court granted Elmore County’s summary judgment motion on September 23, 2013, adopting the legal analysis it gave in its April 16, 2013 decision denying Nix’s partial summary judgment motion. Nix timely appealed.
II. ISSUES ON APPEAL
1. Whether the district court erred when it granted summary judgment on Nix’s breach of employment contract claim.
2. Whether the district court erred when it granted summary judgment Nix’s breach of implied covenant of good faith and fair dealing claim.
3. Whether Nix’s supervisor acted outside of his authority under the ECPP.
4. Whether either party is entitled to attorney fees on appeal.
III. STANDARD OF REVIEW
On appeal from the grant of a summary judgment motion, this Court applies the same standards the district court used. Mackay v. Four Rivers Packing Co., 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where “the pleadings, depositions, and admissions on file, together with the affidavits, if any, *314 show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” I.R.C.P. 56(e). All reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party, and disputed facts are liberally construed in the nonmoving party’s favor. Mackay, 145 Idaho at 410, 179 P.3d at 1066. If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate. Jenkins v. Boise Cascade Corp., 141 Idaho 233, 238, 108 P.3d 380, 385 (2005). However, to withstand summary judgment, the nonmoving party must submit more than just eonclusory assertions that an issue of material fact exists. Id. “A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.” Id.
As to contract disputes at summary judgment, “[wjhen the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists.” Johnson v. Allied Stores Corp., 106 Idaho 363, 368, 679 P.2d 640, 645 (1984).
IV. DISCUSSION
Nix presents three issues on appeal. First, Nix argues that Elmore County violated the ECPP when it failed to provide her with a pre-termination hearing. Second, Nix argues that Elmore County breached the implied covenant of good faith and fair dealing when it denied Nix a pre-termination hearing. Finally, Nix argues that Parsons did not have the authority to change the ECPP’s terms and conditions. Before addressing the parties’ arguments, we summarize the ECPP provisions and written correspondence relevant to this appeal.

Relevant ECPP provisions.

The second page of the ECPP provides a disclaimer in bold, all-caps lettering that states:
THIS PERSONNEL POLICY IS NOT A CONTRACT. NO CONTRACT OF EMPLOYMENT WITH ELMORE COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF THE GOVERNING BOARD AND UNLESS IT IS SIGNED AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.
Then, under the heading “General Policies” on that same page, the ECPP states:
... The terms set forth in this booklet reflect public entity policy at the time of its printing, but they are subject to change at any time, after notifying the Elected Officials and at the discretion of the Elmore County Board of Commissioners.
Only the Elmore County Board of Commissioners has authority to establish general policy for Elmore County employees. The terms and conditions set forth in this policy, and in the resolutions and policy statements which support it, cannot be superseded by any other official’s commitment, without the express written agreement of the Board of Commissioners.
The ECPP also sets forth a non-exclusive list of prohibited workplace conduct and provides that penalties for violating any of the rules may include, but are not limited to: (1) leave with or without pay; (2) suspension; (3) demotion; (4) verbal or written reprimand; and (5) dismissal. The section entitled “Employee Discipline Procedures and Principles” elaborates further on these principles. That section provides that the purpose of the discipline policy “is to establish a consistent procedure for maintaining suitable behavior and a productive working environment in the workplace,” and that the procedures are “directory in nature and minor variations in the processes set forth herein shall not affect the validity of any actions taken pursuant to this policy.”
The section then reiterates that a supervisor may respond to personnel policy violations by taking disciplinary steps including, but not limited to, (1) oral or written warnings; (2) suspension; (3) demotion; (4) probation; and (5) dismissal. The section further provides that “Elmore County reserves the right to take any of the prescribed steps *315 in any order in the event that a supervisor deems a policy violation or action of the employee to be serious enough to warrant a certain step.” Finally, the section contains a heading entitled “Appeal Hearing (Pre-Deprivation),” which provides:
The personnel policy of Elmore County establishes the right for full-time regular and part-time employees to a hearing pri- or to any final decision on discharge, demotion with attendant change in pay, or suspension without pay____The following elements of procedure are for any such hearing to be held before the Supervising Elected Official, unless waived by the employee:
a. The employee shall be provided notice of the eharges[ ] (Notice of Proposed Action) against the employee, an explanation of the employer’s evidence, the proposed personnel action, and the procedure for requesting a hearing.
The ECPP defines “full-time regular employees” as “[e]mployees whose typical work schedule calls for at least 20 hours of scheduled work during each weekly payroll period. Full-time regular employees shall receive all employee benefits provided by Elmore County as such benefits now exist or may be subsequently changed.” It further defines “part-time regular employees” as
[e]mployees whose typical work schedule calls for at least 20 hours, but not as much as 34 % hours of scheduled work during each week. Part-time regular employees shall receive reduced employee benefits in accordance with policies adopted by the Board of Commissioners. The scope of benefits received may vary proportionately with the number of hours typically scheduled for a part-time regular employee. The number of hours scheduled may also affect the employee’s obligation to participate in certain mandatory state benefit programs. Certain benefits may not be available.
The ECPP does not define “probationary employee.” However, the ECPP does contain a section entitled “Probationary Period,” which states:
The probationary period shall be regarded as an integral part of the selection process and shall be utilized for closely observing the-employee’s work, for securing the most effective adjustment of a new employee to his or her position and for rejecting an introductory employee whose performance is not satisfactory. The probationary period will typically be a standard 90 to 180 days.
This section was amended on December 15, 2008, to change the probationary period to one year.[2]

Written Statements.

The Notice of Disciplinary Action that Parsons gave to Nix detailed numerous instances of Nix’s poor job performance and notified her that pursuant to the ECPP, her acts and omissions subjected her to discipline including, but not limited to, dismissal from employment. After listing several instances of deficient performance and inaccuracies in time cards, the Notice stated: *316 The Notice gave Nix the opportunity to respond and to meet with Parsons to discuss the matters set forth therein. It noted that Nix’s failure to meet with Parsons would constitute a waiver of her opportunity to provide a response to the proposed personnel action and to the information contained in the Notice. The Notice reiterated that Elmore County would not tolerate further misconduct without imposing more serious discipline including, but not limited to, termination from employment.
*315 You are hereby notified that ... it is my intention to impose the following discipline:
2. You are placed on Probationary Status for a period of one (1) year. Your probation will run until February 1, 2013. You are, and remain, an at-will employee.
3. I am providing you with a Warning that this is your Last Chance to continue employment with Elmore County.
5. A failure to meet the goals set forth herein will subject you to termination at the conclusion of your year-long probationary period. A review of progress will be made with you throughout this year-long period. If progress is not evident, you may be subject to immediate termination at any time during the probationary period.
*316 After Nix failed to show improvement in her job performance, she received a Notice of Termination, which provided, in relevant part:
On February 1, 2012, you were served with a Notice of Last Chance based upon a disciplinary action being taken against you. You were placed on probationary status for a period of one (1) year, during which time you were informed that you would be an at-will employee subject to termination with or without cause at any time during your probationary period. You were, also, warned that this was your last chance to continue employment with Elmore County, and any further performance problems could result in your termination of employment.
Based upon the fact that your performance in your position has not met our expectations and you have not fulfilled the performance requirements as set out in the Notice of Last Chance, you are hereby notified that your employment as a Custodial and Maintenance Employee with Elmore County is hereby terminated effective this 30th day of April 2012.
Should you believe that this termination is based upon an unlawful discriminatory purpose, you have seven (7) days from termination to notify me that you wish to meet with the Elmore County Board of Commissioners to discuss this issue. No other issues pertaining to your termination will be considered at that time.
Upon requesting a hearing from the BOCC, Nix received a notice of hearing, which stated:
Pursuant to your request, the Elmore County Board of Commissioners have scheduled a meeting to discuss any discrimination claims you may have against Elmore County, its agents or employees. Please be advised that you were an at will employee, and as such are not entitled to a hearing regarding the reasons for your termination. The Board will not discuss performance-related issues.
Finally, Nix also received a letter from Kristina Schindele, Elmore County’s prosecuting attorney, which informed Nix that based upon Nix’s prior notice of her at-will status, the pre-deprivation procedures set out in the Personnel Policy did not apply to her. The letter reminded Nix that the BOCC would not engage in an evidentiary hearing and that it would not entertain any further legal authority Nix had in support of her request for an evidentiary hearing. With the foregoing information in mind, we address the parties’ arguments below.
A. The district court properly granted summary judgment to Elmore County on Nix’s breach of employment contract claim because the ECPP was not an enforceable contract.
Nix argues Elmore County wrongfully discharged her in violation of the ECPP. Essentially, Nix argues that she was a full-time permanent employee when Elmore County placed her on probation and that because the ECPP does not specifically state that disciplinary probation extinguishes the “established right” to a hearing, she was entitled to a pre-termination hearing. To support this argument, Nix points to the language in the ECPP that provides “[t]he personnel policy of Elmore County establishes the right for full-time regular and part-time employees to a hearing prior to any final decision on discharge.... ” Nix asserts that her probationary status did not “silently terminate her full-time permanent status thus subjecting her to the risk of being terminated without cause the same as if she was a new hire.” Ultimately, Nix asserts that there are two types of “probationary” employees: introductory probation employees, who are not entitled to a pre *317 termination hearing; and disciplinary probation employees, who Nix contends maintain their regular full-time employment status and right to a pre-termination hearing.
Employment in Idaho is presumed to be at-will unless the employee is hired pursuant to a contract that states a fixed term or limits the reasons for discharge. Jenkins, 141 Idaho at 240-41, 108 P.3d at 387-88; Mitchell v. Zilog, Inc., 125 Idaho 709, 712, 874 P.2d 520, 523 (1994). Without a contractual agreement limiting a party’s right to terminate the employment relationship, either party may terminate it at any time or for any reason without incurring liability. Zilog, 125 Idaho at 712, 874 P.2d at 523. “This rule reflects the judiciary’s reluctance to bind employers and employees to an unsatisfactory and potentially costly situation, although we recognize that either party is likely to be damaged by an unforewarned termination of the employment relationship.” Id.
In the absence of an express contract, courts may imply a limit to the at-will employment presumption where the circumstances surrounding the employment relationship could cause a reasonable person to conclude that the parties intended a limitation on discharge. Id. In particular, a plaintiff can rebut the at-will presumption by showing the parties intended that an employee handbook or manual constitute an element of an employment contract. Id. However, the manual’s statements and policies “must be more than vague statements of opinion or prediction, and policies must manifest an intent that they become part of the employment agreement.” Bollinger v. Fall River Rural Elec. Co-op., Inc., 152 Idaho 632, 638, 272 P.3d 1263, 1269 (2012). Indeed, an employer may provide guidelines, which are necessary conditions for continued employment, and avoid having them read as a guarantee for a specific term of employment or as placing limits on the reasons for discharge. Jenkins, 141 Idaho at 242, 108 P.3d at 389.
Whether an employee manual constitutes an element of an employment contract is generally a question of fact unless the handbook “specifically negates any intention on the part of the employer to have it become a part of the employment contract.” Zilog, 125 Idaho at 712-13, 874 P.2d at 523-24. Thus, pursuant to Zilog, this Court must examine the ECPP together with any written and oral statements made to Nix “to determine first, whether they specifically negate any intention of contract formation.” Id. at 713, 874 P.2d at 524. If not, this Court must then determine if there is a question of fact as to whether the parties intended the ECPP to express a term of the employment contract. Id.
The district court found that the ECPP as a whole was not intended to create enforceable contract rights. Accordingly, the district court determined that Nix was an at-will employee and Elmore County could terminate her at any time without incurring liability. Consequently, the district court concluded that Elmore County did not violate the ECPP or wrongfully discharge Nix when Elmore County denied her a pre-termination hearing. After reviewing the ECPP, together with the various written notices given to Nix and other evidence in the record before this Court, we agree with the district court’s conclusion.
First and most importantly, the ECPP explicitly disclaims any intent to have its provisions become part of an employment contract. Second, the ECPP informs Elmore County employees that the terms in the policy are discretionary and that the BOCC can change them at any time. When these statements are read together with the ECPP as a whole, the ECPP did not create enforceable contract rights. Instead, the ECPP’s provisions are more aptly characterized as guidelines and expectations. An employer may provide guidelines, which are necessary conditions for continued employment, without having them read as a guarantee for a specific term of employment. Jenkins, 141 Idaho at 242, 108 P.3d at 389. Nix does not point to a signed contract or any other admissible evidence to indicate that the ECPP created enforceable contract rights and in particular, the right to a pre-termination hearing. Therefore, Nix has failed to present a genuine issue of material fact that the ECPP created an enforceable contract giving her *318 the right to a pre-termination hearing. Elmore County’s written statements to Nix further support this conclusion.
In the absence of an express contract, a limitation to the at-will employment relationship will only be implied when the circumstances surrounding the employment relationship could cause a reasonable person to conclude that the parties intended a limitation on discharge. This is not the case here. Based on the facts in this case, a reasonable person could not conclude that Nix was entitled to a pre-termination hearing. Indeed, the ECPP’s clear disclaimer, the Notice of Disciplinary Action, and the Notice of Termination left little doubt that the ECPP’s pretermination hearing provision did not apply to Nix. The Notice of Disciplinary Action specifically told Nix that she would be subject to immediate termination at any time during her probationary period if she failed to improve her job performance. This was sufficient to put her on notice that she could be discharged at any time without prior warning. These notices also effectively disclaimed any “implied” rights contained in the ECPP, including any implied right to a pretermination hearing. Therefore, the ECPP’s clear disclaimer and the notices Elmore County gave Nix are such that Nix could not have reasonably held an expectation to a pretermination hearing.
Despite the ECPP’s disclaimer and the Notice of Disciplinary Action, Nix asserts that she was still entitled to a pre-termination hearing under the ECPP even if she was an at-will employee. Nix asserts that her probation did not terminate her full-time permanent employee status or her right to a pre-termination hearing. To support this argument, Nix cites to McGraw v. City of Huntington Beach, 882 F.2d 384 (9th Cir. 1989). However, Nix’s reliance on McGraw is misplaced. In that case, the City promoted McGraw to a new position and placed her on a six-month “promotional probationary period.” McGraw, 882 F.2d at 386. Five months into her probation, the City told McGraw that she would not pass probation and placed her on a paid leave of absence. Id. After McGraw attempted to exercise her right to return to her former position, the City terminated MeGraw’s employment. Id. at 387. To support its decision, the City cited a provision in the employment manual for the proposition that a probationary employee could be terminated at any time without cause and without the right to appeal. Id. McGraw subsequently filed a complaint alleging she was deprived a property right in continued public employment. Id.
The federal district court granted the City’s summary judgment motion, “ruling that appellant was a ‘probationary employee’ and, as such, was not entitled to pre-termination notice and a hearing as she indisputably would have been as a matter of procedural due process if she had been a ‘permanent employee’ when she was terminated.” Id. The Ninth Circuit reversed, reasoning that
[i]n light of the City Council’s stated purpose of protecting City employees from dismissal without “just cause” and the City’s policy of fostering devotion to the competitive service by encouraging promotional advancement, it is very difficult to accept an argument that the City Council intended “permanent employee” status, once earned, to terminate sub silentio upon promotion, once again subjecting the promoted employee to the risks of what is essentially the “at-will” employment status of newly-hired probationary employees.
Id. at 388.
McGraw is distinguishable from this case on several grounds. First, McGraw is factually distinguishable in that the employee in that case was promoted to a new position and placed on a “promotional probationary period.” Nix was not promoted before she was placed on probation. Rather, Nix’s probation was a disciplinary step her supervisor took in response to her poor work performance. Furthermore, unlike Nix, when the employee in McGraw was placed on probation, she was not told that she was an at-will employee during her probation or that she was subject to immediate termination during her probation. Because the employee in McGraw had recently been promoted, the Ninth Circuit could not accept the premise that her permanent employee status was terminated upon promotion. Here, Nix’s *319 probation was a disciplinary step and Nix’s Notice of Disciplinary Action specifically informed Nix that she was an at-will employee subject to immediate termination at any time during her probation. Therefore, Nix could not have reasonably continued to hold an expectation in continued employment or an expectation of the right to a pre-termination hearing. Therefore, this case is factually distinguishable from McGraw.
Furthermore, McGraw involved a federal constitutional due process claim, whereas this case involves wrongful termination and breach of implied covenant of good faith and fair dealing claims. Finally, McGraw involved California law and Personnel Rules that the City of Huntington Beach formally adopted by resolution. Id. at 387. Indeed, the Ninth Circuit noted that the Personnel Rules were the rough equivalent of municipal ordinances. Id. at 387 n. 11. It does not appear that Elmore County formally adopted the ECPP through a resolution. Rather, the ECPP merely provides guidelines for employees, not hard and fast rules. Indeed, Elmore County’s policy is entitled “Elmore County Personnel Policy,” whereas the City of Huntington Beach’s policy was entitled “Personnel Rules.” More significantly, the ECPP in this case contains a clear disclaimer stating that the ECPP is not a contract. The Personnel Rules in McGraiv contained no such disclaimer. Therefore, Nix’s reliance on McGraiv is misplaced.
Because there was a disclaimer in the ECPP explicitly stating that the ECPP was not a contract between employees and Elmore County, the provision providing for a pre-termination hearing is not binding on Elmore County. The disclaimer retained Nix’s at-will status even though “the policies also provide[d] ... for an appeals process.” Lawson v. Umatilla Cnty., 139 F.3d 690, 693 (9th Cir.1998). This is particularly true given the notices Nix received that specifically stated she was, and would remain, an at-will employee and could be terminated at any time during her probation. Therefore, we hold that the ECPP was not an employment contract and did not create enforceable contract rights for Nix. Accordingly, the district court did not err when it granted summary judgment to Elmore County on Nix’s breach of employment contract claim.
B. The district court properly granted summary judgment to Elmore County on Nix’s good faith and fair dealing claim because Nix failed to identify a contractual duty that Elmore County failed to perform in good faith.
Nix also argues that Elmore County breached the implied covenant of good faith and fair dealing when it refused to provide Nix with a pre-termination hearing.
The covenant of good faith and fair dealing is implied in all employment agreements, including at-will employment relationships. Jenkins, 141 Idaho at 242-43, 108 P.3d at 389-90. The covenant requires the parties to perform in good faith the obligations contained in their employment agreement. Bollinger, 152 Idaho at 640, 272 P.3d at 1271. A party breaches the covenant when it violates, qualifies, or significantly impairs any benefit or right of the other party under the employment contract— whether express or implied. Jenkins, 141 Idaho at 243, 108 P.3d at 390. However, “the covenant does not create new duties that are not inherent in the agreement itself and, thus, cannot create a for-eause termination limitation in an at-will employment agreement.” Id. at 242-43, 108 P.3d at 389-90. The covenant only arises in connection with the terms the parties agreed to, and does not create new duties that are not inherent in the employment agreement. Van v. Portneuf Med. Ctr., 147 Idaho 552, 562, 212 P.3d 982, 992 (2009). This Court has held that “the covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions.” Jenkins, 141 Idaho at 243, 108 P.3d at 390.
As discussed above, the ECPP did not create any binding contractual rights for Nix or place restrictions on Elmore County’s right to terminate Nix. Nix was an at-will employee at the time of her discharge. Accordingly, Elmore County did nothing more than exercise its contractual right when it terminated Nix’s employment. Because the ECPP did not create any binding contractual *320 rights, Elmore County did not “violate, qualify, or significantly impair” any benefit or right of Nix. The implied covenant of good faith “does not create new duties that are not inherent” in the employment relationship, nor does it alter an employer’s right to fire an at-will employee by creating a for cause requirement. Nix presents no argument, nor are there facts in the record to suggest, that Elmore County failed to perform in good faith obligations under an employment agreement. Therefore, the district court properly granted Elmore County summary judgment on Nix’s good faith and fair dealing claim.
C. Nix’s supervisor did not impermissibly change the ECPP’s terms and conditions.
Nix asserts that Parsons, her supervisor, did not have authority to change the ECPP’s terms and conditions. Nix asserts that Parsons changed Nix’s employment status from full-time regular employee to at-will employee, depriving her of “an agreed upon covenant:” the right to a hearing. To support this argument, Nix points to the following statement in the ECPP:
Only the Elmore County Board of Commissioners has authority to establish general policy for Elmore County Employees. The terms and conditions set forth in this policy, and in the resolutions and policy statements which support it, cannot be superseded by any other official’s commitment, without the express written agreement of the Board of Commissioners.
Nix asserts that only the BOCC had the authority to change Nix’s employment status to at-will and Parsons acted outside his authority in doing so.
Parsons did not change any of the ECPP’s terms and conditions. Rather, Parsons took disciplinary steps that the ECPP explicitly authorized. Specifically, the ECPP authorized Parsons to give Nix written and oral warnings, to place her on probation, and to terminate her employment. Parsons followed the ECPP’s guidelines when he placed her on probation and the Notice of Disciplinary Action contained all the information the ECPP required. The Notice of Disciplinary Action merely informed Nix what her probationary status entailed, including that she was an at-will employee and subject to termination at any time during her probation.
To the extent the Notice of Disciplinary Action “changed” the ECPP’s terms and conditions by informing Nix she was an at-will employee subject to termination at any time, Nix implicitly accepted those changes when she continued to work after receiving the Notice of Disciplinary Action. See Bollinger, 152 Idaho at 638, 272 P.3d at 1269; Watson v. Idaho Falls Consolidated Hospitals, Inc., 111 Idaho 44, 48, 720 P.2d 632, 636 (1986). Furthermore, the BOCC reviewed and confirmed Nix’s termination and the decision that Nix was not entitled to a pre-termination hearing. By affirming Nix’s termination and that Nix was not entitled to a pretermination hearing, the BOCC effectively ratified any alleged “changes” Parsons may have made to the ECPP’s terms and conditions. Gilmore v. Bonner Cnty. Sch. Dist. No. 82, 132 Idaho 257, 261, 971 P.2d 323, 327 (1999) (stating that a principal ratifies an unauthorized transaction when it adopts the benefits of the transaction with knowledge of all material facts). Therefore, Nix’s argument that Parsons impermissibly changed the ECPP’s terms and conditions fails.
D. Elmore County is entitled to attorney fees on appeal.
Both parties seek attorney fees on appeal. However, because Nix is not the prevailing party on appeal, she is not entitled to attorney fees and we need only address whether Elmore County is entitled to attorney fees. Elmore County asserts that it is entitled to attorney fees pursuant to Idaho Code sections 12-107, 12-117, and 12-120. Idaho Code section 12-120(3) allows the prevailing party on appeal to recover attorney fees when the underlying claim is a commercial transaction. Printcraft Press, Inc. v. Sunnyside Park Utils., Inc., 153 Idaho 440, 461, 283 P.3d 757, 778 (2012). Here, Nix alleged a breach of her employment contract, so Idaho Code section 12-120(3) applies. Sanders v. Bd. of Trustees of Mountain Home Sch. Dist. No. 193, 156 Idaho 269, 274, 322 P.3d 1002, 1007 (2014). Thus, as the prevailing party on appeal, Elmore County is *321 entitled to attorney fees under Idaho Code section 12-120(3).
Y. CONCLUSION
We affirm the district court’s grant of Elmore County’s summary judgment motion. Costs and attorney fees to Elmore County.
Justices EISMANN, W. JONES and HORTON concur.

. Specifically, the BOCC concluded:
A probationary employee of the county is expressly an "at-will” employee. The ECPP (employment manual) states that the probationary period “shall be utilized for closely observing the employee’s work ... and for rejecting an introductory employee whose performance is not satisfactory.” To construe that the ECPP creates anything other than “at-will” status for a probationary employee, or that the probationary employee is entitled to a hearing upon termination, would render the probationary employee concept meaningless under the ECPP. Probationary employees are not entitled to a hearing under the ECPP.

. The amendmént changed "The probationaiy period will typically be a, standard 90 to 180 days” to “The initial probationaiy period will be 1 year.”