# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44090

| | | |
|---|---|---|
| RAUL MENDEZ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, September 2017 Term |
| | ) | |
| v. | ) | 2018 Opinion No. 7 |
| | ) | |
| UNIVERSITY HEALTH SERVICES BOISE | ) | Filed: January 17, 2018 |
| STATE UNIVERSITY, MARIEL DOYLE, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Timothy Hansen, District Judge.

The district court's judgment is <u>affirmed</u>.

Raul Mendez, Meridian, appellant pro se.

Cantrill, Skinner, Lewis, Casey & Sorensen, LLP, Boise, for respondent.

_____

## SUBMITTED ON THE BRIEFS

BRODY, Justice.

This case addresses an employee's claims arising after his employer terminated his employment. The employee brought claims under provisions of the Idaho Human Rights Act, claiming that the employer unlawfully discriminated against him based on race. He also alleged breach of employment contract and the implied covenant of good faith. Finally, he sought to disqualify the trial judge for cause based upon perceived bias. The district court denied the employee's disqualification motion and granted summary judgment for the employer on all four of the employee's claims. We affirm the judgment entered in favor of the employer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Raul Mendez was hired by University Health Services Boise State University ("University Health") as a customer service representative on or about August 24, 2011. Mariel

Doyle worked at University Health as a team lead and was one of Mendez's supervisors. She also participated in Mendez's interview and hiring process. Mendez remained in his position with University Health until November 15, 2011, when he was notified that his employment was being terminated. Mendez was given the option to resign in lieu of being terminated, and he chose to resign on November 18, 2011.

Mendez filed a four-count complaint against University Health, Mariel Doyle, and Libby Greaney. He amended his complaint, removing Libby Greaney and adding the State of Idaho as a defendant. Mendez later requested to dismiss the State of Idaho, which the district court granted. Mendez proceeded against University Health and Mariel Doyle ("Respondents"), alleging (1) unlawful discrimination in violation of Idaho Code section 67-5909, (2) retaliation in violation of Idaho Code section 67-5911, (3) breach of the implied covenant of good faith and fair dealing, and (4) breach of implied and/or express employment contract.

Mendez's claims centered on conduct that he alleged constituted discrimination against him because he is Hispanic. He claimed that Respondents failed to provide him adequate training and supervision, which non-Hispanic employees received. Mendez also claimed that non-Hispanic employees made the same mistakes he made, but only he received formal discipline. Additionally, he claimed his reporting the alleged discrimination led to his eventual discharge less than three months after he started as a customer service representative.

Respondents filed a motion for summary judgment on all four counts in the amended complaint. Along with the supporting memorandum, the Respondents included affidavits of several University Health employees—including Respondent Mariel Doyle. Before the district court's scheduled hearing on the summary judgment motion, Mendez filed a motion to disqualify the trial judge without cause, followed a week later by a motion to disqualify with cause. Following a hearing, the district court dismissed the motion to disqualify without cause as untimely, and denied the motion to disqualify with cause. The court then held a hearing on Respondents' summary judgment motion, and granted summary judgment for Respondents on all four counts of Mendez's amended complaint. Mendez timely appealed.

## II. STANDARDS OF REVIEW

This Court reviews a summary judgment motion under the same standards the district court used. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c) (2015). All disputed facts must be liberally construed in favor of the nonmoving party, and all reasonable inferences from the record must be drawn in favor of the nonmoving party. *Mackay,* 145 Idaho at 410, 179 P.3d at 1066. "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* This Court reviews questions of law *de novo. Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010) (citation omitted).

This Court considers appeals from a district court's discretionary determination based on three factors: "(1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the bounds of that discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason." *State v. Pratt*, 128 Idaho 207, 211, 912 P.2d 94, 98 (1996).

Mendez appeared pro se throughout the majority of the district court's proceedings below and continues to on appeal. "Pro se litigants are not entitled to special consideration or leniency because they represent themselves." *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 322, 297 P.3d 1134, 1139 (2013). Pro se litigants must conform to the same standards and rules as litigants represented by attorneys, and this Court will address the issues accordingly. *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009); *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005).

### III. ANALYSIS

**A. The district court did not err in granting summary judgment on Mendez's discrimination claim under Idaho Code section 67-5909.**

Mendez asserted a race discrimination claim under Idaho Code section 67-5909. He claimed that Respondents failed to properly train him, and that this resulted in formal discipline and eventual discharge. He also alleged that he did not receive his orientation package until months after starting in his position, while another new employee—who was white—received her package immediately. Additionally, he claimed that other non-Hispanic employees made similar mistakes, but Respondents did not subject them to the same punishment. Mendez claimed also that the only other Hispanic male employee endured similar treatment. He alleged his eventual resignation in lieu of termination followed directly from these actions in violation of his

3

civil rights under Idaho law. Mendez's primary contention on appeal is that the district court failed to liberally construe the disputed facts and draw inferences in his favor.

The Idaho Human Rights Act ("IHRA"), Idaho Code sections 67-5901 *et seq.*, lists two general purposes relevant to Mendez's claims: (1) "[t]o provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, . . . [and] (2) [t]o secure for all individuals within the state freedom from discrimination because of race, color, religion, sex or national origin . . . ." I.C. § 67-5901. The IHRA prohibits employers from discriminating against or discharging employees based on race, color, religion, sex, or national origin. I.C. § 67-5909. The IHRA's legislative intent permits Idaho courts to reference federal law in construing state provisions. *Mackay*, 145 Idaho at 413, 179 P.3d at 1069. In IHRA cases, this Court applies the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hatheway v. Bd. of Regents of the Univ. of Idaho*, 155 Idaho 255, 310 P.3d 315 (2013) (applying *McDonnell Douglas* to an age discrimination claim); *Bowles v. Keating*, 100 Idaho 808, 606 P.2d 458 (1979) (same for a sex discrimination claim).

The *McDonnell Douglas* test proceeds in three parts. The threshold requirement is for an employee to "establish a prima facie case of discrimination under the disparate treatment theory." *Bowles*, 100 Idaho at 812, 606 P.2d at 462. This requires a plaintiff to show that: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action, and (4) similarly situated people outside his protected class received more favorable treatment, "or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). Once a plaintiff satisfies the threshold requirement, the burden of production shifts back to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." *Hatheway*, 155 Idaho at 263, 310 P.3d at 323 (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, if the defendant meets the burden of production, the plaintiff then must produce evidence demonstrating "the proffered reason is in fact pretext for unlawful discrimination." *Id.*

The district court articulated the correct legal standard under *McDonnell Douglas* in its summary judgment analysis. As to the prima facie requirement, Respondents did not dispute the first and third elements in the proceedings below—that Mendez is a member of a protected class as a member of the Hispanic race, and that his notice of termination constituted an adverse employment action. The district court further found the record sufficient to demonstrate Mendez

4

was qualified for his position as a customer service representative, since Respondents hired him at increased starting pay due to his medical experience. In its analysis of the fourth element, the district court stated:

> Plaintiff asserts that Eric [], the only other Hispanic male employee in the department, also experienced similar adverse employment actions. Plaintiff further asserts that Defendant did not provide him with a new employee orientation package until approximately two months after he was hired, yet Defendant made sure that Jacee, a new employee who was "white," received her orientation package right away.

The district court concluded, "Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has established a prima facie case of disparate treatment."

The court's analysis then shifted to whether Respondents had a nondiscriminatory reason for terminating Mendez's employment. Here, the district court cited Mendez's supervisor Mariel Doyle's well-documented performance concerns in the record, including inappropriate conversations with patients, untimeliness, staying on the clock longer than should be required, failure to follow procedures, negative attitude, and inappropriately "gawking" at people, among others. The district court concluded that Respondents had "legitimate, nondiscriminatory reasons for disciplining [Mendez] and terminating his employment."

Finally, the court then applied the final step of the *McDonnell Douglas* analysis to determine whether Respondents' reasons for terminating Mendez's employment were genuine or pretext. Here, the burden shifts back to Mendez. *Hatheway*, 155 Idaho at 267, 310 P.3d at 327. He "can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* (citation omitted). "Generally, a plaintiff demonstrates pretext by showing that 'the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action.'" *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). The district court concluded that Mendez could not meet this burden, as he provided no evidence that his cited work issues are not based in fact or are not legitimate nondiscriminatory reasons. The court concluded that Mendez did not demonstrate a genuine issue of material fact as required, and thus granted summary judgment for Respondents.

In light of the record, the district court's analysis and reasoning were sound. Construing all facts liberally for Mendez, and drawing all reasonable inferences in his favor, he has failed to

show Respondents' stated reasons were pretext rather than legitimate. This Court thus affirms the district court's grant of summary judgment on Mendez's discrimination claim.

**B. The district court did not err in granting summary judgment on Mendez's retaliation claim under Idaho Code section 67-5911.**

Mendez next asks this Court to review the district court's grant of summary judgment on his retaliation claim under Idaho Code section 67-5911. Mendez claimed that his discharge from University Health was causally related to his complaining to the senior HR specialist about his perceived discrimination. Again, he contends that the court failed to liberally construe the disputed facts and draw inferences in his favor.

An IHRA claim under section 67-5911 is commonly known as a retaliation claim. *Patterson v. State of Idaho, Dep't of Health & Welfare*, 151 Idaho 310, 318, 256 P.3d 718, 726 (2011). A prima facie retaliation claim requires a plaintiff to demonstrate that (1) he engaged in protected activity; (2) suffered an adverse employment action; and (3) there is a causal link between the two. *Id.* Opposing an unlawful employment practice is a protected activity. *Id.* (citing *EEOC v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002)); I.C. § 67-5911.

Respondents conceded that Mendez engaged in a protected activity by reporting his concerns about potential discrimination, and that his resignation in lieu of termination constituted an adverse employment action. The only contested issue in the district court then was whether there was a causal link between the two. Mendez claimed he contacted the HR specialist about his concerns and requested to meet on about October 6, 2011. He met with the HR specialist to report alleged discrimination on October 10, 2011. However, Respondent Doyle began documenting Mendez's performance issues in late September—approximately two weeks before this meeting. The district court noted:

> From September 27, 2011, through October 7, 2011, Ms. Doyle documented numerous concerns regarding Plaintiff's performance, including Plaintiff's inappropriate conversations with patients, his unwillingness to answer telephone calls, and his failure to follow procedures for checking patients out and for recording patients' insurance information. On October 5, 2011, before Plaintiff engaged in protected activity by meeting with Mr. Cover regarding his discrimination concerns, Ms. Doyle created a Record of Employee Conference Form setting forth performance issues Ms. Doyle had observed on October 3 and October 4, 2011. Further, as early as October 4, Ms. Doyle indicated in an email conversation that Plaintiff may not "work out" and may need to be released.

6

Mendez's bare assertions and conclusory statements that his firing was in retaliation for reporting discriminatory behavior do not negate the ample facts in the record that his issues started before his protected conduct and continued throughout his tenure at University Health. Mendez failed to demonstrate a genuine issue of material fact on this claim.

This Court determines Mendez did not demonstrate a causal link between his reporting alleged discrimination and his termination, and accordingly affirms the district court's grant of summary judgment on Mendez's retaliation claim.

## C. The district court did not err in granting summary judgment on Mendez's claim for breach of the implied covenant of good faith.

Mendez next attacks the district court's grant of summary judgment on his claim for breach of the implied covenant of good faith. He again alleges that the district court failed to construe the record in the light most favorable to him as the nonmoving party. Mendez restates arguments he made in the district court proceedings about what he alleges are Respondents' good faith violations, including that the Idaho Administrative Code ("IDAPA") prohibits terminating him before the conclusion of his probationary employment period; that Respondents failed to timely provide him with an orientation package or appropriate training; and that Respondents fabricated the issues that led to his termination. Respondents contend that IDAPA does not bar a state entity from terminating an employee during his probationary employment period. They further state that Mendez's late receipt of an orientation package, even if in violation of internal policy, does not rise to the level of breaching the covenant of good faith between employer and employee.

The implied covenant of good faith and fair dealing exists in all employment agreements, including at-will employment. *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 891, 243 P.3d 1069, 1079 (2010). "A party breaches the covenant when it violates, qualifies, or significantly impairs any benefit or right of the other party . . . ." *Nix v. Elmore Cnty.*, 158 Idaho 310, 319, 346 P.3d 1045, 1054 (2015) (citing *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243, 108 P.3d 380, 390 (2004)). This covenant does not create new duties, however, and does not modify an employer's right to fire an at-will employee. *Id.*

Mendez's reliance on IDAPA is misplaced. IDAPA does not mandate that employers retain employees for the duration of their probationary period. On the contrary, it states, "Regardless of the probation status, when a Rule 190 violation supports demotion, suspension, or dismissal, such action may occur." IDAPA 15.04.01.153. Rule 190 includes among its many

7

causes for disciplinary actions: "Inefficiency, incompetency, or negligence in performing duties, or job performance that fails to meet established performance standards." IDAPA 15.04.01.190.01(b).

Mendez's delayed orientation package and his alleged lack of training are likewise unavailing in light of the record in this case. The district court noted the "numerous instances" Mariel Doyle documented where she flagged issues with Mendez's work, spoke to him directly about those issues, and provided corrective instruction. Indeed, Doyle in her affidavit documented dozens of these issues beginning in September and leading up until just days before informing Mendez of University Health's decision to finally terminate him. Mendez provides no evidence for his assertion that Respondents fabricated this information, only conclusory statements. In light of the evidence contained in the record, Mendez fails to demonstrate a genuine issue of material fact regarding this claim.

This Court affirms the district court's grant of summary judgment for Respondent on Mendez's claim for breach of the implied covenant of good faith.

## D. The district court did not err in granting summary judgment on Mendez's claim for breach of employment contract.

Mendez's final claim for relief alleged a violation of employment contract for University Health's alleged failure to follow its policies and procedures. He again claims the district court did not construe the record in his favor as required under the summary judgment standard. Respondents contend summary judgment was proper because Mendez provided no evidence that either an express or implied contract existed between Mendez and University Health.

An employer may terminate its relationship with an at-will employee without liability. *Sorensen v. Comm Tek, Inc.*, 118 Idaho 664, 666, 799 P.2d 70, 72 (1990). However, even in the absence of an express employment contract limiting an employer's right to terminate, one may still be implied. *Id.* "A limitation may be implied if, from all the circumstances surrounding the employment relationship, a reasonable person could conclude that both parties intended that the employer's (or the employee's) right to terminate the employment relationship at-will had been limited by the implied-in-fact agreement of the parties." *Id.*

Mendez provided no evidence of either an express contract, or of circumstances that would indicate an implied contract. He claimed instead that University Health did not follow its own internal policies, and that gives rise to a breach of contract claim. The district court correctly noted that Mendez was an at-will employee "disciplined and terminated during his probationary

period." Mendez failed to demonstrate a genuine issue of material fact on his breach of employment contract claim.

We affirm the district court's grant of summary judgment for Respondent on the claim for breach of employment contract, since neither an express nor implied contract existed.

**E. The district court did not err in denying Mendez's motion to disqualify the trial judge for cause.**

Mendez also appeals the district court's decision to deny his motion to disqualify the trial judge for cause. He asserts only vague allegations based on the district court's procedural decisions, along with accusations of collusion and concealment levied against both the court and opposing counsel. Respondents contend that this motion and Mendez's generic "fraud" claims are meritless.

A motion to disqualify for cause must be "accompanied by an affidavit of the party or the party's attorney stating distinctly the grounds upon which disqualification is based and the facts relied upon in support of the motion." I.R.C.P. 40(d)(2)(B) (2015). Grounds for disqualification include the judge being a party to the proceeding, related to a party, acting as an attorney for a party, or showing bias or prejudice toward a party. I.R.C.P. 40(d)(2)(A) (2015). "A judge may not be disqualified for prejudice unless it is shown that the prejudice is directed against the party and is of such nature and character as would render it improbable that the party would receive a fair and impartial trial." *Idaho Dep't of Health & Welfare v. Doe (2016-27)*, 161 Idaho 660, 664, 389 P.3d 946, 950 (2016).

The district court denied the motion to disqualify for cause. Mendez's claims of judicial bias included email exchanges with clerks, the court's procedural decisions, and scheduling changes. The district court determined that the conduct Mendez alleged showed bias was either frivolous or self-induced. For example, Mendez claimed in his supporting affidavit, "Trial was originally scheduled for 12/8/2014 but it was 'vacated' without a Stipulation or an Order from the Court. I believe that Judge Hansen went along with Defendant [sic] stated desire to vacate trial . . . ." The court vacated the initial trial date because Mendez—on the record—requested more time so he could attempt to find counsel.

Mendez's allegations on appeal follow the same conclusory pattern. For example, Mendez states in his reply brief:

> It is certainly obvious that the 10/4/2011 email reminding all CSR's to not continue making the same mistakes, but for which only Mendez was reprimanded

9

did not need to be sealed and the same goes for the entire exhibit. This is the most obvious proof of how the district judge abused his discretion thru [sic] the proceedings, [and] therefore the reason Mendez [filed the] Motion to disqualify him with cause. The decision was made because defendant attempted to conceal the evidence that proves the disparate treatment.

The record tells a different story, however. Mendez was present at the hearing in which the court discussed sealing his exhibit. After Respondents argued that an exhibit containing personal medical information should be sealed, the court asked if Mendez had any comments in response. Mendez stated he was "not opposed to keeping it out of the public eye" if he could still use it at trial. The court informed him that he could, explained the unsealing process to him, then asked, "[G]iven that explanation, Mr. Mendez, you do not then have a problem with the motion to seal?" Mendez replied, "Correct." Mendez thus shifted his willingness to accept the sealing of the exhibit—which contained the email along with personal medical records—into an allegation that the judge made the decision to seal the document to assist Respondents in concealing evidence. Regarding his for-cause disqualification claim, Mendez has demonstrated on appeal the same tendency to disregard the facts when alleging bias or misconduct.

Procedurally, in considering this motion, the district court noted the issue as one of discretion. It acted within its discretion and used reason when it denied Mendez's motion to disqualify for cause. This Court thus affirms the district court's decision to deny Mendez's motion for disqualification for cause.

## F. Mendez has failed to allege any facts indicating fraud.

Additionally, Mendez recycles the above facts to allege a fraud claim under Rule 60 of the Idaho Rules of Civil Procedure. Under this rule, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." I.R.C.P. 60(b)(3). He alleges nothing new in the fraud claim. The same conclusory allegations on which Mendez relied to appeal the disqualification motion also fail with respect to his fraud claim. Mendez has alleged no facts that would warrant relief under Rule 60 for fraud.

## G. Respondents are entitled to a partial award of attorney's fees.

Respondents request attorney's fees under Idaho Code sections 12-117, 12-120, and 12-121. Section 12-121 allows the Court to "award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Similarly, section 12-117 permits fees "in

any proceeding involving as adverse parties a state agency or a political subdivision and a person, . . . if it finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). Though unsuccessful, we find that Mendez's appeal was not frivolous or without foundation. We do not award fees under these sections.

Section 12-120 allows for reasonable attorney's fees for a prevailing party "in any commercial transaction unless otherwise provided by law . . . ." I.C. § 12-120(3). We have held that an allegation of breach of an employment contract qualifies as a "commercial transaction" under the statute. *Nix v. Elmore Cnty.*, 158 Idaho 310, 320, 346 P.3d 1045, 1055 (2015). Here, Mendez alleged such a breach, so Respondents are entitled to fees associated with their employment contract defense.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the district court's grants of summary judgment and its denial of the motion to disqualify the trial judge for cause. We also award Respondents costs and partial fees as described above.

Chief Justice BURDICK, and Justices JONES, HORTON, and Justice Pro Tem FORD CONCUR.